Hubbard *et al. v.* U. S. Fidelity & Guaranty Co.

(*Jackson,* April Term, 1951.)

Opinion filed May 14, 1951.

BURCH, PORTER & JOHNSON and BAILEY BROWN, all of Memphis, for complainants.

EWING, LAUGHLIN & WATSON, of Memphis, for defendants.

MR. JUSTICE PREWITT delivered the opinion of the Court.

Certiorari has been granted and argument heard. This suit involved the "additional assured" provisions of a public liability policy of insurance on motor vehicles. Both the decrees of the Chancellor and Court of Appeals were in favor of defendant insurance company.

The suit was tried by the Chancellor on oral testimony and the evidence has been preserved by bill of exceptions.

The language of the clause in question is as follows: "III. Definition of Insured. The unqualified word 'insured' wherever used in Coverages A and B and in other parts of this policy, when applicable to such coverages, includes the Named Insured and, except when specifically stated to the contrary, also includes any person while using the automobile and any person or organization legally responsible for the use thereof, provided the actual use of the automobile is with the permission of the Named Insured . . .."

The question here is the effect to be given to the "additional assured" clause, particularly "actual use."

It appears that the Memphis Blue Print and Supply Company was the owner of a motorcycle used in its business and covered in the policy issued by the defendant insurance company.

James C. Baker was employed to use the motorcycle in making delivery of blueprints in and about the city of Memphis. His hours of duty were from 8 a. m. to 5 p. m. on week days, except Saturday and on that day from 8 a. m. to 1 p. m.

When he was employed he was instructed to store the vehicle overnight at the close of his hours of duty and on Sundays and holidays at a garage two blocks away from his employer's place of business, and to pick it up when resuming his hours of duty in the morning. If the vehicle should need repairs, he was to take it to a certain shop and have the repairs made there.

He had no permission to use the vehicle except on the business of the employer and during his hours of duty. On one occasion about two weeks before the accident occurred, he was seen using the vehicle at night, and was warned that he would be discharged if caught doing so

again. When the accident occurred, he was immediately discharged.

When on duty, he was allowed to use his discretion as to the making of deliveries of blueprints, except when especially directed to give priority to a particular customer.

On one Saturday afternoon when he had entirely completed the business of the employer at 1 p. m., instead of storing the vehicle, he rode it up into North Memphis for his own pleasure. He parked it on Thomas Street and entered a cafe without turning off the motor and while he was away, it slipped into gear and ran into the front of a North Memphis coal and hardware company, damaging the plate glass front of the building.

The finding of the Chancellor that Baker was using the vehicle without the consent or knowledge of the employer is well supported by the evidence.

The determining question in this cause is the same as that in the cause of *Morgan* v. *American Casualty Company* which was argued at the same time the present case was presented.

It will be observed that the only discretion given Baker was as to the order in point of time, or priority, in which he would make the deliveries. This involved to a limited extent the route he would take. His authority even when on duty was limited to the one specified act of making deliveries. The time was limited to his specified hours of duty. The limited purpose for which Baker was given possession for that day, as well as every other day, had been accomplished.

The complainant relies strongly upon the case of *Stovall* v. *New York Indemnity Co.*, 157 Tenn. 301, 8 S. W. (2d) 473, 72 A. L. R. 1368. In that case, William R. Moore Dry Goods Company in Memphis employed one

Thomas as its traveling representative in a section of southern Mississippi. The company purchased an automobile before the date of the accident and turned it over to Thomas for his use in covering his territory. He was specifically instructed not to use the car for his own pleasure or private purposes. The expenses of the operation and upkeep of the car were paid by the company. During the week in which the accident occurred, there was a merchants' convention in Memphis attended by retail merchants in the Memphis territory and also attended by substantially all salesmen of the company. Thomas attended the convention and brought the automobile to Memphis, stored it in a public garage and delivered the claim check to the salesmanager under whose supervision he was. On the morning of August 27th, he obtained the claim check from the salesmanager and drove three of his employer's customers to the depot. He then returned the car to the garage, stored it in the name of his employer, but reclaimed the claim check. The same afternoon, without notice to his superior, he got the car from the garage and drove it to Sardis, Mississippi, on a pleasure trip. The accident in which complainants were injured occurred while he was driving the car on this trip.

This Court held the insurance company liable under a clause in the policy "provided such use or operation is with the permission of the named assured."

In the Stovall case, the automobile was turned over to Thomas for his use as representative and salesman. The automobile was used by Thomas at his discretion in such capacity on the business of his employer. The only restriction on its use by Thomas was that he was not to use it for his own pleasure or private purposes. Thomas

was custodian of the automobile under supervision of the salesmanager.

The defendant insists that there is a definite conflict between the Stovall case which was published in 1928 and the unpublished opinion of this Court in the case of *Romines* v. *The Preferred Accident Insurance Company*, opinion November 26, 1932, or about four years after the Stovall case. In the unreported case, it appears that one Kyle was the owner of the automobile and that Gillard was told by Kyle to take the car to a garage and have some repairs and adjustments made on the machine. This was in the forenoon. It was Kyle's intention to make a trip in the afternoon. The stipulation in the Romines case recites that Kyle met Gillard, the latter in the automobile, presumably after the repairs had been made, about 11 a.m. near the corner of Cumberland and Gay Streets in Knoxville. It appears that Kyle told Gillard to take the car to the Farragut taxi garage two blocks away from their point of meeting, Kyle saying that he would be at the garage within a few minutes and get the car himself. Shortly thereafter, Kyle went to the garage for his car and found that Gillard had not arrived. Kyle was not able to learn anything about Gillard or the car until about ten o'clock that night. At that time, Kyle learned that Gillard had had an accident with the car out on Kingston Pike. It otherwise appears in the record that the accident occurred in the evening, the exact time not being mentioned. In the Romines case, there was a discussion of the Stovall case and other cases where the permission to use the car is broad.

In the course of the opinion in the Romines case the Court said:

"A traveling salesman naturally has a wide discretion as to the route he will take and time he will consume in covering a particular territory. It seems to us that a distinction should be taken between the scope and legal implications of a permission like that given to a salesman instrusted with a car and a permission to use a car for a specified purpose for a limited time.

"Here the owner of this car was in legal possession thereof at a point within two blocks of a garage to which he directed the driver of the car to proceed. This driver had been employed for a particular purpose. That purpose had been nearly accomplished. The owner of the car intended that the driver should relinquish possession at the garage within five or ten minutes. The accident occurred at a point far distant from the garage to which the car was destined by its owner and at a time several hours later.

"To say that such deviation from the orders given by the owner with respect to his car should be construed as a use of the automobile with the permission of the owner is too strong a statement."

The Court denied a recovery on this policy.

See *American Automobile Ins. Co.* v. *Jones*, 163 Tenn. 605, 45 S. W. (2d) 52.

In the present case, Baker was employed to use a motorcycle with very limited authority. He had no permission to use the vehicle except on business of his employer and during his hours of duty. In the Stovall case, the salesman was given possession of the automobile with broad permission and wide discretion as to its use. In the cause now before us, Baker was given no discretion as to the use of the motorcycle except for a specified purpose.

The complainant contends that the use of the motorcycle was, in fact, actual use and is of no importance in the construction of the policy; that the question involved is permission, and there is no distinction between use, or actual use, where the employee had the inital permission. See A. L. R. (2d) p. 606, Section 4.

On the other hand, the defendant relies upon the case of *Laroche* v. *Farm Bureau Auto Ins. Co.,* 1939, 335 Pa. 478, 7 A. (2d) 361.

It seems that the courts have not attributed much importance to the difference between the terms "use" and "actual use." No case has been found in which the result has turned upon a distinction of the two terms. See also 45 Corpus Juris Secundum, Insurance, Section 829, p. 902. The term "actual use" appears in the policy in question.

The slight deviation rule has no application under the facts of this case and a discussion of this rule would serve no useful purpose. We are therefore of the opinion that the facts of the case are not controlled by *Stovall* v. *New York Ind. Co.,* relied upon by complainant.

See *Jordan* v. *Shelby Mutual Plate Glass & Casualty Co.,* 4 Cir., 142 F. (2d) 52; *Phoenix Indemnity Co.* v. *Anderson & Powell,* 170 Va. 406, 196 S. E. 629; *Employers' Casualty Co.* v. *Williamson,* 10 Cir., 1950, 179 F. (2d) 11; *Hodges* v. *Ocean Accident & Guarantee Corp.,* 66 Ga. App. 431, 18 S. E. (2d) 28.

The initial permission is not controlling where the use is limited to a specific purpose for a limited time and the driver takes the car for his own purposes and has an accident when using the car in a complete departure from any business of or permission by the owner.

It results that the decree of the Court of Appeals is affirmed.

All concur.