FOLEY *et al. v.* TENNESSEE ODIN INS. CO.

(*Knoxville,* September Term, 1951.)

Opinion filed December 14, 1951.

GOODPASTURE, CARPENTER & DALE, of Nashville, for appellants.

MARSHALL & BLACKMON, of Nashville, and W. P. PURYEAR, JR., of Gallatin, for appellee.

MR. JUSTICE BURNETT delivered the opinion of the Court.

This suit involves the "additional assured" provision of a public liability policy of insurance on motor vehicles. The Chancellor and the Court of Appeals rendered a decree in favor of Foley et al., and against the petitioning insurance company. Certiorari has been granted and argument heard.

The question now before us resolves itself into whether or not the insurance company is liable under the facts of this case in view of the "additional assured" provisions of their policy which is: "The unqualified word 'insured' wherever used in coverage A and B and in

other parts of this policy, when applicable to such coverages, includes the named insured and, except where specifically stated to the contrary, also includes any person while using the automobile and any person or organization legally responsible for the use thereof, *provided the actual use of the automobile is with the permission of the named insured.*"

The facts out of which this lawsuit arose are briefly, as follows:

Foley recovered a judgment in the Circuit Court of Trousdale County against one David Dies for fifteen hundred ($1500.00) dollars as a result of Dies negligently operating a truck off the highway and into the residence of the plaintiffs. This was a default judgment. Later suit was instituted in the Chancery Court of Davidson County against the insurance company, petitioner here, under a policy of insurance written by the petitioning company covering the vehicle which caused the damage. At the time the damage was caused by this automobile truck being operated by Dies, it was owned by one Dixon. Dixon loaned this vehicle to Dies about 8:30 A.M. on the morning of June 14, 1947, to go to Lebanon to get a nephew out of jail. There was no specification when or how the truck should be returned. Dies went to Lebanon, got his nephew out of jail and returned to Hartsville about 2:00 o'clock that afternoon. Later that afternoon, about an hour later, Dies took the truck and started on a trip with another man to Gallatin and it was on this trip that the accident occurred. Dies was an employee of Dixon's subsequent to the accident and on up until probably after the trial of the Chancery case in this cause. There is nothing in the record to show that Dixon specifically limited this loan to the trip to Lebanon. He did not instruct Dies, as soon as he returned from

Lebanon, to return the truck to him. About the time the accident happened Dixon did go to Dies' home looking for the truck, and then as a result of information that he got there he went on over to the point of the accident.

Under this state of facts the insurance company refused to defend the law case and likewise took the position in this Chancery suit that they were not liable because at the time the accident happened Dies had completed the mission for which the truck had been loaned to him and had gone off on an entirely independent mission, and, that therefore under the "additional assured" clause, above quoted, they were not liable. In support of this position the petitioner relies upon the recent case of *Hubbard* v. *United States Fidelity & Guaranty Co.*, Tenn. Sup., 240 S. W. (2d) 245, and other cases. This case under the facts is clearly distinguishable from *Hubbard* v. *United States Fidelity & Guaranty*, supra, because in the Hubbard case the use of the car at the time of that accident was specifically forbidden by the owner and assured. The use of the car in the present case, at the time of the accident, was not specifically forbidden by the owner and assured but was through at least the implied permission of the owner to the driver of the car.

The present case comes directly within the rule as laid down by this Court in *Stovall* v. *New York Indemnity Co.*, 157 Tenn. 301, 8 S. W. (2d) 473, 477, 72 A. L. R. 1368. In that case this Court said: "It is our opinion that the words, 'providing such use or operation is with the permission of the named assured,' were intended to exclude from the protection of the policy the person who should take the automobile and use it without permission or authority in the first instance. *If, however, the automobile covered by the policy is delivered to*

*another for use, with the permission of the owner or
insured, his subsequent use of it is with the permission
of the insured, within the meaning of the policy, regard-
less of whether the automobile is driven to a place or
for a purpose not within the contemplation of the insured
when he parted with possession."* Stovall v. New York
Indemnity Co., supra.

In that case, *Stovall* v. *New York Indemnity Co.*, this
Court definitely aligned itself with a minority of the
Courts wherein it is held that if permission or authority
to take and use the car in the first instance is granted a
party, then, even though that party goes off and uses the
car for other purposes than that of initial permission,
the driver of the car is covered under the "omnibus"
clause.

It is noted that the insurance contract involved
in the Stovall case, supra, "provided such use or oper-
ation is with the permission of the named assured," is
different to that involved in the instant case. The clause
involved in the instant case being "provided the actual
use of the automobile is with the permission of the named
assured". Obviously the insurance company argues that
by reason of this change in words, that is, from the
words "use and operation" to the words "actual use"
that there was a purpose in changing these words and
that the words "actual use" must take with it the
meaning that the use at the time of the accident must
have been with the permission of the named assured.
There is no real distinction between the word "use" and
words "actual use" insofar as this case is concerned.

Webster's New International Dictionary defines the
word "actual" as follows: "(Adj.)—2. Existing in act
or reality; really acted or acting or being; in fact; real,—

opposed to potential, possible, ostensible, virtual, specu-
lative, conceivable, ideal, theoretical, hypothetical, or
nominal; as, the actual cost of goods; the actual case;
actual determination or eviction.—'' ''(noun) 1. That
which exists in fact; a reality.—''

1 Bouvier's Law Dictionary, Rawle's Third Revision,
page 130, defines ''actual'' as something ''real, in op-
position to constructive, or speculative, something exist-
ing in act.''

The difference between ''actual use'' and ''use'' is
the real as opposed to the theoretical, or constructive
enjoyment of a thing. The clause in question, above
quoted from the insurance contract, covers any person
operating the automobile and actually using it with the
permission of the insured. Dies had this permission in
the first instance. He was not directed not to take the
vehicle to other places than to go to Lebanon. He was
not directed to return it to Dixon immediately upon his
return from Lebanon. He had been working for Dixon
and driving for him before and after this accident. Under
such a state of facts and in view of our previous de-
cisions which have been the law in this State for many
years, *Stovall* v. *New York Indemnity Co.*, we must con-
clude that the policy in question covered the vehicle at
the time of this accident and that therefore the insurance
company is liable under their contract.

We are well aware of the fact that there are decisions
from other courts to the contrary such as *Haeuser* v.
*Aetna Casualty & Surety Co.*, La. App., 185 So. 493, and
others that might be found in the various annotations
on this question hereinafter referred to. The clause
involved herein and other similar clauses have been very
extensively annotated in 72 A. L. R. 375, 106 A. L. R. 1259

and 126 A. L. R. 544. A review of these various cases will not help. Suffice it to say that this Court in the Stovall case chose to align itself with the minority view on the question and we see no reason to overrule the Stovall case. It results that the judgment of the lower courts will be affirmed.

All concur.