244 F.2d 333
 Raymond L. YOUNG, Raymond L. Young, Administrator of the
Estate of Mary E. Young, and Brenda Joyce Young,
an infant who sues by her father and
next friend, Raymond L. Young,
Appellants,
v.
STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Bloomington,
Illinois, Appellee.
 No. 7334.
 United States Court of Appeals Fourth Circuit.
 Argued March 11, 1957.
Decided May 10, 1957.
 
 David H. Kizer, Jr., Lynchburg, Va. (Thomas L. Phillips and Kizer & Phillips, Lynchburg, Va., on the brief), for appellants.
 John B. Browder, Richmond, Va. (Leaman, Browder & Russell, Richmond, Va., Henry M. Sackett, Jr., and Williams, Robertson, Sackett & Blackburn, Lynchburg, Va., on the brief), for appellee.
 Before PARKER, Chief Judge, and SOPER and SOBELOFF, Circuit Judges.
 SOPER, Circuit Judge.
 
 
 1
 This case involves the interpretation to be given to the omnibus clause of an automobile insurance policy under the law of Tennessee; and specifically whether Andrew Blakely Massey was driving the car of C. Wythe Edwards, the insured, with the latter's permission when the car came into collision with an automobile occupied by Raymond L. Young, his wife Mary E. Young and his infant daughter Brenda Joyce Young, causing the death of Massey and Mrs. Young and injuring the other riders in the Young car. Suits brought by Young on behalf of his wife's estate and on behalf of his daughter and himself resulted in judgments against the estate of Massey, and when executions on the judgments were returned 'no effects' the present suits were brought against the insurance company to require it to pay the judgments in amounts within the policy limits. The cases were consolidated and tried before the District Judge without a jury and were dismissed on the ground that the use of the car by Massey at the time of the collision was without the owner's permission. The plaintiffs appealed; and since the contract of insurance was executed in Tennessee it is conceded that the policy should be interpreted according to the law of that state.
 
 
 2
 Massey was employed as a salesman in the summer of 1954 in Bristol, Tennessee, by Bristol Lincoln-Mercury Company. His wife was then living in Portsmouth, Virginia, and his parents in Accomac County, Virginia. Edwards, who lived in Johnson City, Tennessee, was employed as a claims adjuster for the defendant insurance company at its Bristol office. He owned a second-hand Ford car which he desired to dispose of, and coming into contact with Massey at the Bristol office engaged him to sell the car on a commission basis. Pursuant to this arrangement the car was delivered to Massey with the understanding that Massey would drive the car for the purpose of finding a customer and demonstrating it to prospective purchasers. He was to pay for the necessary oil and gasoline and keep the car clean and in good repair. Edwards told him, however, that he did not want him 'gallivanting around' in it or using it for personal business.
 
 
 3
 Massey undertook to find a purchaser and demonstrate the car, but without the knowledge of Edwards used it for his personal use to some extent. Thus, in August 1954, he drove the car through Portsmouth, Virginia, to Accomac County to visit his family, and made an effort to sell the car to his father. On his return he was arrested in Lynchburg for giving a bad check and the policeman, suspecting that the car was stolen, telephoned Edwards in Johnson City and was told that if Massey had the car in Lynchburg to sell it, it was all right.
 
 
 4
 Later the same day Edwards went to Bristol to take his car back as he was irritated with Massey for using the car on the long trip to Accomac County. Not finding him, he returned to Bristol two days later for the same purpose. He charged Massey with diminishing the value of the car by taking the trip of nearly 1,000 miles, but when Massey explained that he thought he could sell the car on the Eastern Shore, Edwards consented for him to keep the car, but told him that he was not to take the car out of the Bristol area for any purpose.
 
 
 5
 On September 2, Edwards again saw Massey in Bristol and told him that if he had not sold the car by the following Saturday, he was going to take it back, as his wife needed it. Early in the morning of Saturday, September 4, Massey called Edwards on the telephone and asked him if he was coming over to Bristol that day to take the car back, and Edwards replied that he was. Then Massey began to talk about buying the car himself and they about agreed on terms, but it transpired that, in order to purchase the car, Massey would have to secure a loan. The parties came to the understanding that Edwards would come to Bristol early the following week to see whether Massey could make arrangements for the purchase of the car. In this conversation, Massey told Edwards that he was going to Portsmouth that day. Edwards asked how he was going, to which Massey replied that he was going on the bus because he knew Edwards did not want him to drive his car. Thereupon, Edwards expressly forbade Massey to drive the car to Portsmouth, and Massey told Edwards he was not going to do so. Nevertheless, Massey did take the car that day on his trip to Portsmouth and sometime after midnight, when he had reached a point a few miles east of Lynchburg, the fatal collision occurred.
 
 
 6
 We have had occasion in a number of decisions to consider the standard omnibus clause of an automobile policy and to determine under a variety of circumstances whether permission given by the insured for the use of the car was broad enough to cover the use to which the car was put by another at the time of an accident. See Continental Casualty Co. v. Padgett, 219 F.2d 133, in which we reviewed the authorities in this circuit and noted that some courts hold the view that, in order to bring a driver other than the named insured within the coverage of the clause, it must be shown that permission for the use of the car had been expressly or implicitly given by the named insured, while other courts take the liberal view that express permission for a given purpose implies permission for all purposes.
 
 
 7
 The Tennessee courts have been placed in the latter category principally because of the decision in Stovall v. New York Indemnity Co., 1928, 157 Tenn. 301, 8 S.W.2d 473, 477, 72 A.L.R. 1368. In that case a wholesale dry goods corporation assigned the insured car to a salesman for use in covering his territory but instructed him not to use the car for his personal purposes. In disregard of this limitation, the salesman drove the car for a considerable distance on a visit to a young lady and an accident occurred during the trip. It was held that the insurance company was liable under the policy. The court said that if an automobile covered by a policy is delivered to another for use with the permission of the insured, his subsequent use of it occurs with the permission of the insured within the meaning of the policy, 'regardless of whether the automobile is driven to a place or for a purpose not within the contemplation of the insured when he parted with possession.'
 
 
 8
 This decision would go far to justify judgments for the plaintiffs in the present cases were it not that its effect has been greatly weakened by subsequent decisions of the Supreme Court of Tennessee, which are reviewed in some detail in the decision of the Sixth Circuit in Branch v. United States Fidelity & Guaranty Co., 198 F.2d 1007. Thus, it has been held that the Stovall rule does not apply where the person in possession of the car with the owner's permission allows a third person to operate it without the owner's knowledge or consent, American Automobile Ins. Co. v. Jones, 1932, 163 Tenn. 605, 45 S.W.2d 52; or where the vehicle was obtained from the owner for a particular purpose for a limited time and thereafter was used by the permittee for an entirely different purpose of his own, Hubbard v. United States Fidelity & Guaranty Co., 1951, 192 Tenn. 210, 240 S.W.2d 245, citing the unreported case of Romines v. The Preferred Accidents Ins. Co., decided Nov. 26, 1932, by the Supreme Court of Tennessee. Subsequently, however, the Tennessee court upheld a recovery from the insurance company when the person to whom the car was entrusted for a specific purpose was involved in an accident while using the car for his own purposes. The court relied on its decision in the Stovall case and distinguished the Hubbard decision on the ground that the use to which the car had been put in that case had been specifically forbidden by the owner. See Foley v. Tennessee Odin Ins. Co., 1951, 193 Tenn. 206, 245 S.W.2d 202. The last decision of the Supreme Court of Tennessee to which our attention has been called is Moore v. Liberty Mutual Ins. Co., 1951, 193 Tenn. 519, 246 S.W.2d 960, 961. In this case, the owner of a truck gave an employee permission to haul a small amount of furniture for his sister-in-law from one point to another in the city of Nashville. The employee got drunk and drove the car thirty miles outside the city and was involved in an accident, in which Moore was killed. The court denied recovery, holding that the doctrine of the Stovall case was limited to instances where the owner gives general custody to the user of the automobile; but that where a limited permission to use a car for a limited time and for a limited purpose is given, then the coverage of the omnibus clause is not extended to the use of the car and place or for any purpose not consented to or reasonably contemplated by the owner in giving the initial permission.
 
 
 9
 The Sixth Circuit relied on the last mentioned decision in Branch v. United States Fidelity & Guaranty Co., 198 F.2d 1007, 1011, where a garage employee was given custody of a customer's automobile to take it to a garage to work upon it and later was involved in an accident when he started out to a place thirty-five miles away to get his wife and bring her home. Recovery from the insurance company was denied. After reviewing the Tennessee decisions, the court said:
 
 
 10
 '* * * In our opinion, the controlling rule of law of Tennessee, as it presently exists, is as expressed in the case of Moore v. Liberty Mutual Ins. Co., supra, its latest ruling on the question, which draws the distinction between general custody of and limited permission to use the insured automobile, rejecting the earlier rule announced in the Stovall case that liability exists where the original possession of the car was with the permission of the owner, regardless of its unauthorized and unanticipated use thereafter.'
 
 
 11
 It may be added that there is no Tennessee decision which holds that the omnibus clause covers a use by one who uses the car for a purpose specifically forbidden by the owner.
 
 
 12
 It is important, in applying these principles to the pending case, to keep in mind the precise arrangement between Massey and Edwards as to the use of the car at the time the accident occurred. Undoubtedly a broad discretion as to its use was conveyed upon Massey when the car was first delivered to him in the early part of August for purposes of sale; but this arrangement was modified in the latter part of the month after Massey had abused his authority by driving the car 1,000 miles on a visit to his family. On this account Edwards decided to take the car back and twice, on August 24 and August 26, he went from Johnson City to Bristol for this purpose. Finding Massey on the second visit he was prevailed upon to let Massey keep the car for a while longer to show to prospective purchasers, but he specifically instructed Massey not to take the vehicle out of the Bristol area. On September 4, Edwards again planned to go to Bristol to get the car but was again persuaded by Massey, in a telephone conversation, to wait until the early part of the next week, so that Massey might make an arrangement to buy the car himself. It was in this conversation that Edwards, learning that Massey was going to Portsmouth that day, forbade him to use the car for the trip and Massey agreed that he would not do so. In violation of this promise, he made the trip in the car and was killed. In these circumstances, we are in agreement with the final conclusion of Judge Barksdale expressed in the following excerpt from his opinion:
 
 
 13
 'In the instant case, Massey had no unlimited general custody of Edwards' automobile. He was given possession of the automobile for the specific and limited purpose of selling it, within the restricted area of the vicinity of Bristol. Although Massey, to a limited extent, put the automobile to his personal use, this was without the knowledge or consent of the owner. When Edwards learned of the one occasion when Massey drove his automobile to the distant city of Portsmouth and beyond, he upbraided Massey and directed him never to take it out of the Bristol area again. These facts would be sufficient to compel me to conclude that the use of Edwards' automobile by Massey at the time of the accident was without the express or implied permission of the owner insured. But in addition, there is the compelling fact that, as to the particular use to which Massey was putting this automobile at the time of the fatal accident which is the basis of this litigation, Edwards specifically forbade Massey to make this trip and Massey assured Edwards that he would not. To deduce 'permission' from such a state of facts would require a species of legal legerdemain.' (144 F.Supp. 221.)
 
 
 14
 It is objected that the Judge's findings were based to some extent on hearsay testimony as to the arrangement under which the car was placed in Massey's custody. Specifically it is contended that Edwards should not have been allowed to testify that Massey agreed with him that he would not drive the car to Portsmouth on the day of his death and, also, that the witness Phelan, an agent of the insurance company, should not have been allowed to testify as to the conversation between Massey and Edwards when the latter came to Bristol on August 26. This testimony, however, was not in violation of the hearsay rule since it was not offered to establish the truth of the statements of the parties to the transaction but, rather, to prove the understanding between them as to the custody and use of the car while in Massey's possession. This was a factual issue necessary to a determination of the case which could be proved only by the testimony as to the verbal statements of the parties to the transaction. Under the established rule such testimony is admissible. See Wigmore on Evidence, Vol. 3, §§ 1766, 1770; Terry v. United States, 4 Cir., 51 F.2d 549; Smedra v. Stanek, 10 Cir., 187 F.2d 892.
 
 
 15
 Nor was there prejudicial error in refusing to permit Mrs. Massey to testify that Edwards admitted to her that he was aware that her husband had driven the car to Portsmouth two weeks before the collision, or in refusing to permit Mrs. Booth, a witness for the plaintiffs, to testify whether Massey had told her how he happened to get possession of the Edwards car. This testimony was hearsay in the true sense of the word and on that account was properly excluded; but, in any event, the rulings were not prejudicial to the plaintiffs because Edwards admitted that he had known of Massey's use of the car on the trip to Portsmouth and further testified in detail as to the circumstances under which the car was put in Massey's possession. There was no offer to show that Edwards' testimony on this point was incorrect.
 
 
 16
 Affirmed.