EMPLOYERS INSURANCE OF WAUSAU, Plaintiff-Appellant,

v.

Jeff WOODRUFF, Auvern Williams, Doyle Williams, Patsy McAlpin, Weakley County Electric System and Chicago Southern Transportation Company, Inc., Defendants-Appellees.

Court of Appeals of Tennessee, Western Section.

March 20, 1978.

Certiorari Denied by Supreme Court July 10, 1978.

Griffin Boyte, Warmath & Boyte, Humboldt, for plaintiff-appellant.

H. Max Speight, Dresden, for Woodruff.

Thomas, Welles & Thomas, Dresden, for Williams.

Allen J. Strawbridge, Jr., Strawbridge & Strawbridge, Martin, for McAlpin.

Richard L. Dunlap, Jr., Dunlap, Dunlap & Hessing, Paris, for Chicago Southern Transportation.

MATHERNE, Judge.

This lawsuit involves the construction of an additional insured clause of an automobile liability policy. The insurer seeks declaratory judgment as to whether it must defend a personal injury lawsuit brought against the driver of the insured automobile and whether it is liable under the policy should the injured party obtain judgment against the driver. The trial judge held against the insurer, and it appeals to this Court.

A named insured under the policy is Ferry-Morse Seed Company. The defendant Jeff Woodruff worked for Ferry-Morse as a checkup-salesman. His duties were to call on customers of Ferry-Morse to inventory seeds that had been shipped to the customers, to collect for the seeds sold by the customer and to pick up the unsold seeds for return to Ferry-Morse.

Woodruff was hired in Fulton, Kentucky by a Mr. King who was in charge of the Ferry-Morse operation in the State of Kentucky. After giving Woodruff some preliminary instructions and a manual of instruction which included the job description, hours of work, reporting instructions and instructions for the use and care of a motor vehicle to be furnished by Ferry-Morse, King delivered to Woodruff a 1975 van-type Chevrolet automobile owned or leased by Ferry-Morse with instructions to report to a Mr. Holman in Louisville, Kentucky. Wood-

ruff reported as directed and was eventually assigned an area in extreme northeast Kentucky.

About a month later Woodruff drove the van to Fulton, Kentucky. Holman recommended that Woodruff be fired for leaving his area without notifying the company. King, however, decided to give Woodruff another chance and told him to report back to Holman. A fair reading of the proof indicates that the company officials were more concerned about Woodruff's leaving his area without notifying the company than with his use of the van to go to Fulton. On about October 24, 1975, Woodruff decided he was through with Ferry-Morse and returned to Fulton in the van, arriving there at about 8:00 p. m. Later that evening he drove the van to Martin, Tennessee and was involved in an automobile collision at about 2:00 a. m. the next morning. At the time of the collision Woodruff was using the van for his personal pleasure.

The facts established that the van was in the general custody of Woodruff. The manual of instruction required that he keep the vehicle in proper running condition. He was authorized to have necessary repairs made. The manual stated that "weekend non-business driving in a company car is discouraged." Non-business use was not specifically prohibited. Officials of Ferry-Morse testified that they told Woodruff not to use the van for personal purposes. It appears, however, that other employees used company cars for personal reasons, and the injunction not to so use the vehicles, if given, was not enforced.

The policy issued to Ferry-Morse defines persons insured as follows:

II. Persons insured.

Each of the following is an insured under this insurance to the extent set forth below:

(a) the named insured.

(b) * * *.

(c) any other person while using an owned automobile or a hired automobile with the permission of the named insured, provided his actual operation or (if he is not operating) his other actual use thereof is within the scope of such permission * * *.

The words "actual use" as distinguished from "use" or "using" have been held to be of no significance when interpreting a clause of this nature. *Foley v. Tennessee Odin Ins. Co.* (1951), 193 Tenn. 206, 245 S.W.2d 202.

In *Stovall v. New York Indemnity Co.* (Tenn.1928), 157 Tenn. 301, 8 S.W.2d 473, the Court considered the effect of permission by the named insured that another could use the insured vehicle. The Court aligned Tennessee with the minority view as follows:

It is our opinion that the words, "providing such use or operation is with the permission of the named assured," were intended to exclude from the protection of the policy a person who should take the automobile and use it without permission or authority in the first instance. If, however, the automobile covered by the policy is delivered to another for use, with the permission of the owner or insured, his subsequent use of it is with the permission of the insured, within the meaning of the policy, regardless of whether the automobile is driven to a place or for a purpose not within the contemplation of the insured when he parted with possession.

In *Hubbard v. U. S. Fidelity & Guaranty Co.* (1951), 192 Tenn. 210, 240 S.W.2d 245 the Court held that:

The initial permission is not controlling where the use is limited to a specific purpose for a limited time and the driver takes the car for his own purposes and has an accident when using the car in a complete departure from any business of or permission by the owner.

We note that the opinion in *Moore v. Liberty Mutual Ins. Co.* (1952), 193 Tenn. 519, 246 S.W.2d 960, distinguishes *Hubbard* from *Stovall* on the basis that the cases turn upon the distinction of general custody (*Stovall*) and limited permission (*Hubbard*). In the former, the initial permission

will render the insurance applicable even though the party given custody causes an injury while using it for reasons not contemplated by the owner. Whereas in the latter case of limited permission, the initial permission does not extend the authorized use beyond the limitation placed thereon, and if injury results from use beyond the permission given, the policy does not cover the loss.

In *Stovall* the clause read: "providing such use or operation is with the permission of the named assured." The contract now before the Court has the additional provision: "provided his * * * use thereof is *within the scope of such permission*." (Emphasis added).

■ We conclude that the policy provision "within the scope of such permission" can have no effect where general custody of the vehicle was entrusted to another person. As a practical matter, it would be difficult to determine what use would be "within the scope of such permission" and what use would not be so included where the owner-named insured surrendered general custody of the vehicle to another. Therefore, applying the *Stovall* rule to the facts of this lawsuit, we hold that the policy does afford coverage to the employee Woodruff.

The trial judge is affirmed. The cost in this Court is adjudged against the plaintiff-appellant for which execution may issue, if necessary.

NEARN and SUMMERS, JJ., concur.