**ESTATE OF Ronald L. ADKINS, Plaintiff/Appellant,**

**and**

**Terrance Lynn Daniels, Intervening Plaintiff/Appellant,**

**v.**

**WHITE CONSOLIDATED INDUSTRIES, INC. and Continental Insurance Company, Defendants/Appellees.**

Court of Appeals of Tennessee, Eastern Section.

Nov. 14, 1989.

Application for Permission to Appeal Dismissed by Supreme Court Feb. 5, 1990.

W. Brownlow Marsh, Maryville, for plaintiff-appellant, Estate of Ronald L. Adkins.

W. Zane Daniel, Knoxville, for intervening plaintiff-appellant, Terrance Lynn Daniels.

J. Gregory O'Connor, Knoxville, for defendants-appellees.

OPINION

ANDERSON, Judge.

The dispositive issue in this case is whether an employee was a permissive user of his employer's vehicle. The Chancellor held he was not and that his employer's automobile insurance policy provided no coverage. We affirm.

The issue was raised by a declaratory judgment action instituted by the Estate of

Ronald L. Adkins ("Adkins")[1]. Adkins, an employee of White Consolidated Industries ("White"), while driving a vehicle leased by White, was involved in an accident with Terrance Lynn Daniels ("Daniels"). Daniels sued Adkins and White and obtained a judgment against Adkins for $185,000. The suit against White, based on the theory of respondeat superior, was disposed of by summary judgment based on a finding that Adkins was not within the course and scope of his employment when the accident occurred and, therefore, White was not liable for Adkins' actions. This Court upheld White's dismissal from the lawsuit.[2] The judgment remains unsatisfied. Adkins' action maintains he was covered under White's insurance policy issued by Continental Insurance Company at the time of the accident.

According to the stipulated facts, White employed Adkins in 1982 as an appliance technician, and provided a van for Adkins' use in performing his duties. Adkins was permitted to use the van to and from work and his home, and was to retain possession of the van after business hours, on weekends and on holidays. In the past, the appliance technicians needed the vans to answer emergency service calls. More recently, the technicians retained the vans for security reasons, since the local White office lacked adequate facilities to keep the vans on the business premises.

Instructions were given to return to the shop daily, at which time receipts were reported and work orders received which showed service calls to be made and specific travel routes to be used. Discretion was given to change the order of service calls if needed. Working hours were from 8:00–5:00 and weekly 24–hour emergency standby duty was rotated.

Adkins admitted he had not received permission to operate the van on the evening of the accident, nor had he checked with his employer or supervisor about using the van. He had not acted with White's authority, consent or knowledge, nor was he pursuing any business for White. He also conceded he knew the van was to be used for work purposes only and for no other purpose; he had been told of company policy concerning the van's use; and he knew he was violating policy when the accident occurred. Adkins said he may have used the van in the past for personal business with permission, but agreed he knew of no other employees who had driven White vehicles for personal business. His supervisor, on the other hand, testified this accident was the only time an employee had used a company vehicle without permission.

White's Rules of Conduct, which Adkins signed on January 25, 1982, and which he reviewed periodically after beginning employment, read:

> Any of the following actions by an employee are considered extremely serious misconduct and may result in immediate discharge.
>
> ....
>
> 4. Unauthorized personal use of Company vehicles, tools, or equipment.
>
> ....

> s/Ron Adkins               1–25–82
> ———————            ———————
> Signature                    Date

> I have read and received a copy of the Rules of Conduct.

Following the accident, White discharged Adkins for violation of the company policy.

The insurance policy issued by Continental Insurance Company ("Continental") to White contained the following language:

> We will pay all sums the **insured** legally must pay as damages because of **bodily injury** or **property damage** to which this insurance applies, caused by an **accident**

---

1. Adkins died in 1984 from an unrelated accident.

2. The Court of Appeals affirmed the dismissal, finding that an employee driving a company van to purchase groceries while off-duty operated outside the scope of his employment. The employer's work did not create the necessity for the trip, and no proof showed that the groceries intended for purchase, to be used to prepare lunch, would have been eaten in such a manner as to benefit the employer. *Daniels v. White Consol. Indus., Inc.,* 692 S.W.2d 422 (Tenn.Ct. App.1985).

and resulting from the ownership, maintenance or use of a covered **auto.**

. . . .

Anyone else is an **insured** while using with **your** permission a covered **auto you** own, hire or borrow. . . .

(emphasis in original).

On these facts, the Chancellor found that Adkins operated the company van without permission and was, therefore, not covered according to the language of the policy.

█ Where there is no conflict in the evidence as to any material fact, the question on appeal is a question of law. Therefore, the scope of our review is *de novo* with no presumption of correctness for the trial court's conclusions of law. *Adams v. Dean Roofing Co.*, 715 S.W.2d 341 (Tenn. Ct.App.1986); *Billington v. Crowder*, 553 S.W.2d 590 (Tenn.Ct.App.1977).

Professor Couch, in his treatise on insurance, discusses the question of when a deviation from permission will preclude coverage under an insurance policy omnibus clause.

### 3. EFFECT OF DEVIATION FROM PERMISSION

§ 45:464. **The three deviation rules, generally.**

. . . .

The courts are not agreed as to the legal theory to be applied in determining when a deviation from the purpose and use for which permission is granted will preclude the coverage under the omnibus clause. In this respect, the courts have adopted three different rules: (1) the strict, conversion, or specific purpose rule, (2) the liberal initial permission or hell or high water rule and (3) the moderate or "minor deviation" rule. Under the strict, conversion, or specific purpose rule, the courts hold that any deviation, no matter how slight, will defeat liability under the coverage of the omnibus clause; under the liberal initial permission rule, the courts hold that once permission is given, it will extend to any and all uses of the vehicle; and under the moderate or "minor deviation" rule, the

courts hold that a slight or nonmaterial deviation does not preclude coverage under the omnibus clause.

G. Couch, *Couch on Insurance 2d*, § 45:464 at 845–46 (1981 and Supp.1988) (footnotes omitted).

In 1928 the Tennessee Supreme Court enunciated the rule that owner's permission granted initially to the user affords coverage under the owner's insurance policy for damage or injury resulting from that use.

If . . . the automobile covered by the policy is delivered to another for use, with the permission of the owner or insured, his subsequent use of it is with the permission of the insured, within the meaning of the policy, regardless of whether the automobile is driven to a place or for a purpose not within the contemplation of the insured when he parted with possession.

*Stovall v. New York Indemn. Co.*, 157 Tenn. (4 Smith) 301, 315, 8 S.W.2d 473, 477 (1928). The Court observed that if application of an insurance contract depends upon the extent to which the driver deviates from the owner's authorized permissive use, the test for liability would be variable and uncertain. *Id.* 157 Tenn. at 314, 8 S.W.2d at 477.

In *Stovall*, the employer provided its traveling salesman with a vehicle for use in covering his territory. The employer instructed the salesman that he was not to use the car for his own pleasure or private purposes. After attending a company convention in Memphis, the salesman took the car from company storage and used it to visit his girlfriend who lived in Sardis, Mississippi, 135 miles from his sales district. As luck would have it, he had an accident. Applying what is now known as the "liberal initial permission rule," the Court found that the facts of the case brought the employee within the protection of the policy owned by the employer-insured.

The Sixth Circuit, in *Caldwell v. Standard Accident Insurance Co.*, 98 F.2d 364 (6th Cir.1938), analyzed the permission rule in a mother-son context. In *Caldwell*, the issue was insurance coverage under an om-

nibus clause for a car passenger's tort judgment against the driver, who was the insured's son. The insured mother had given her son permission to use the car in Dalton, Georgia, to go to a movie, but he was to return after the movie. Instead, he drove to a dance in Resaca, Georgia, and an accident occurred. The court stated:

[U]nder this record undoubtedly W.R. Evans, Jr. had practically the exclusive use of the car, with his mother's consent.... However, as to this particular transaction, the evidence is uncontroverted that permission to go to Resaca was not given, and in fact there was a positive prohibition against taking the car from Dalton.

... The particular use was not only not specifically permitted; it had actually been forbidden. We have been cited to no decision which holds that under an omnibus clause such as here involved a specific prohibition as to manner of use is outweighed by a general permission so that coverage is extended actually against the orders of the named assured.

Since the use made of the car was prohibited, it was not used with the permission of the named assured, and the company is not liable under the policy.

98 F.2d 365–66. The court noted the criticism by the *Stovall* court of analyzing "slight deviations" but stated that this was not a slight deviation issue; rather, it was a case where a specific use was forbidden.

In the instant case, Adkins was given exclusive custody of the van but, like the driver in *Caldwell*, the named insured had limited the scope of his permission with a specific prohibition against using the van for personal use.

In *Hubbard v. United States Fidelity & Guar. Co.*, the Tennessee Supreme Court apparently retreated from the *Stovall* rule, declaring that

[t]he initial permission is not controlling where the use is limited to a specific purpose for a limited time and the driver takes the car for his own purposes and has an accident when using the car in a complete departure from any business of or permission by the owner.

192 Tenn. (28 Beeler) 210, 217, 240 S.W.2d 245, 248 (1951).

In *Hubbard*, the employer provided the employee a vehicle for Memphis deliveries during limited hours. Afterhours instructions were to store the vehicle overnight, Sundays and holidays at a garage. However, the employee had been observed personally using the vehicle after regular business hours. He was told he would be discharged if it happened again. Despite the warning, he again used the vehicle for personal business after his designated hours of duty. Unfortunately, while doing so, he left the vehicle unattended and it rolled into a building. He was immediately discharged, having used the vehicle contrary to the named insured's specific prohibitions. The *Hubbard* court distinguished *Stovall* by observing the *Stovall* employee had "broad permission and wide discretion as to the vehicle's use," whereas the *Hubbard* employee "was given no discretion as to the use of the [vehicle] except for a specified purpose." *Hubbard*, 192 Tenn. at 216, 240 S.W.2d at 248.

In the same year *Hubbard* was decided, the court was presented with a case "directly within the rule as laid down by [the Supreme Court] in *Stovall* ...." *Foley v. Tennessee Odin Ins. Co.*, 193 Tenn. (29 Beeler) 206, 209, 245 S.W.2d 202, 203 (1951). In *Foley*, the employer allowed the employee to take a vehicle to Lebanon to get his nephew out of jail. After doing so, the employee drove the vehicle elsewhere that same day and was involved in an accident. The court noted that, unlike *Hubbard*, "the use of the car ..., at the time of the accident, was not specifically forbidden by the owner ... but was through at least the implied permission of the owner to the driver of the car." *Foley*, 193 Tenn. at 209, 245 S.W.2d at 203. The employee was not told to return the car after his initial trip to Lebanon, and he was not discharged from his employment after the accident. Relying on the *Stovall* case, the *Foley* court held under the facts of the case, the employer's insurance policy afforded coverage. The *Foley* court distinguished the *Stovall* and *Hubbard* cases, by analyzing

the scope of the initial permission given by the named insured, particularly the lack of any specific prohibitions on use.

In *Moore v. Liberty Mut. Ins. Co.*, 193 Tenn. (29 Beeler) 519, 246 S.W.2d 960 (1952), the Supreme Court again clarified the permission rules in *Hubbard, Stovall*, and an unreported case, *Romines v. The Preferred Accident Ins. Co.*, decided November 26, 1932. According to the *Moore* Court, *Hubbard* and *Romines* held:

> [W]here one has only limited permission of the owner to use the car in a *specified area* for a *limited time* and *particular purpose* and does not have general discretion as to the use of the car, then the coverage of the omnibus clause is not extended to his use of the car any place or for a purpose not consented to nor reasonably contemplated by the owner in giving the initial permission.

193 Tenn. at 522, 246 S.W.2d at 961 (emphasis added).

In *Moore*, the employee truck driver had his employer's limited permission to personally use the truck after hours to move furniture within the city of Nashville. Instead, he went on an entirely different and independent mission to Murfreesboro, drank whiskey with a friend, and was involved in an accident. The court found that the employee was not acting with the permission of the named insured and therefore there was no coverage under the policy. The *Hubbard, Romines,* and *Stovall* cases "turn upon the distinction of general custody and limited permission." *Id.*

Shortly after the *Moore* decision was announced, the Sixth Circuit Court of Appeals addressed the same issue in *Branch v. U.S. Fidelity & Guaranty Co.*, 198 F.2d 1007, 1011 (6th Cir.1952). The court noted that Tennessee had adopted the liberal initial permission rule in *Stovall* in 1928, but that the *Caldwell, Romines, Hubbard,* and *Moore* cases limit the broad rule as stated in *Stovall.* The *Branch* court stated:

> In our opinion, the controlling rule of law in Tennessee, as it presently exists, is as expressed in the case of *Moore v. Liberty Mutual Ins. Co.*, supra, its latest ruling on the question, which draws the distinction between general custody of and limited permission to use the insured automobile, rejecting the earlier rule announced in the *Stovall* case that liability exists where the original possession of the car was with the permission of the owner, regardless of its unauthorized and unanticipated use thereafter.

198 F.2d at 1011. Accordingly, the court found no coverage for the accident involving a garage employee who used a car in the garage for service to drive to another town to pick up his wife.

Citing *Branch*, Professor Couch, in his treatise, *Couch on Insurance*, discusses the permission rule, concluding:

> In some jurisdictions the effort is made to distinguish between the conflicting doctrines on a factual basis of whether the permitee was given general custody of the car or limited permission to use the car. This is merely a formalized way of stating that there is no permission to use the car in a way which was not intended by the bailor insured.

G. Couch, *Couch on Insurance 2d*, § 45:464 at 846 (1981 and Supp.1988) (footnote omitted).

This Court applied the *Stovall* rule more recently where an employee with general custody of a company van was involved in an automobile accident outside his designated customer calling area. *Employers Ins. of Wausau v. Woodruff*, 568 S.W.2d 625 (Tenn.Ct.App.1978). The employer's instruction manual required the employee to maintain the vehicle; stated that "weekend non-business driving in a company car is discouraged"; but did not specifically prohibit non-business use. Other employees used company cars for personal reasons, and the company did not enforce the injunction against such use. On these facts, this Court found the employee was covered under the employer's insurance policy.

■ In the instant case, Adkins' personal use of the van was specifically prohibited by his employer, the named insured. Though it appears that Adkins had general custody of the van since he kept it in his possession at all times, when general custody is analyzed in terms of the scope of the

initial permission given, it is clear that Adkins' permission was a limited one.

We therefore agree that Adkins was not a permissive user under the Continental insurance policy issued to White, and no coverage is afforded. We affirm the Chancellor's judgment. Costs of this appeal are taxed to the Appellants.

SANDERS, P.J. (E.S.), and FRANKS, J., concur.