IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
JULY 17, 2007 Session

**PATSY L. ALDRIDGE v. PAM ALDRIDGE, ET AL.**
**IN RE: CONSERVATORSHIP OF BILL M. ALDRIDGE**

**Direct Appeal from the Probate Court for Shelby County**
**No. C-11251    Robert Benham, Judge**

_____

**No. W2006-02334-COA-R3-CV - Filed November 27, 2007**

_____

This is a case involving a petition for appointment of conservator and a request for attorney's fees by the non-petitioning spouse of the ward. The husband and wife were married, but lived apart. The husband lived with his daughter from a previous marriage. Unknown by the husband's children, he continued to see and financially support his estranged wife. The husband suffered from bipolar disorder requiring several hospitalizations. The husband, during a manic period, emptied his 401K account and purchased several vehicles and properties. The husband's daughter petitioned the court for appointment of a conservatorship for her father. The court found that the husband was disabled, and appointed the daughter as the conservator over his person and a third-party attorney as the conservator over his finances. The wife was represented by counsel during the proceedings. The court ordered the conservator to pay the wife spousal support in the amount of $2,000 a month out of the husband's $150,000 estate. The wife then petitioned the court for an award of her attorney's fees, which the probate court denied. Wife appeals, arguing that the lower court has the statutory authority pursuant to Tenn. Code Ann. § 34-3-109 to include in the award of financial support her attorney's fees. We affirm.

**Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Probate Court Affirmed**

ALAN E. HIGHERS, P.J., W.S., delivered the opinion of the court, in which HOLLY M. KIRBY, J., and BEN H. CANTRELL, SP.J., joined.

Michael L. Robb, Justin N. Joy, Memphis, TN, for Appellant

Thomas R. Buckner, Bruce M. Smith, Lynn W. Thompson, Memphis, TN, for Appellees

# OPINION

## I. FACTS & PROCEDURAL HISTORY

Bill M. Aldridge ("Ward") and Patsy L. Aldridge ("Appellant" or "Wife") were married on September 3, 1999. Ward had four adult children from a previous marriage. Ward and Wife lived together for a time in Rienzi, Mississippi. Ward once asked Wife for a divorce around the spring of 2000, but Ward never filed for divorce. Ward moved out of the marital home and moved into the home of his daughter, Pam Aldridge ("Appellee" or "Daughter"), in Cordova, Tennessee. Unbeknownst to Daughter and the rest of Ward's family, Ward continued to visit and support Wife.

On January 19, 2005, Daughter filed a petition in the Probate Court of Shelby County, Tennessee, for her appointment as the conservator for Ward. Daughter alleged in the petition that Ward was currently hospitalized due to his bipolar disorder and that over the past four years, Ward "suffered a series of manic phases" which required hospitalization. Ward was last hospitalized in 2000 during a manic phase. Ward is also diabetic and must take insulin injections four times each day. Daughter alleged that in June of 2004, Ward "began displaying signs of a manic phase." Beginning in September of 2004, Ward made several large purchases, including seven vehicles, a house, and another property. Ward was also in the negotiation stage for the purchase of another home in Corinth, Mississippi. Daughter alleged that Ward lived with her until around November of 2004, when he moved into the home he purchased. Ward also made a complete withdrawal of his 401K, an estimated $200,000. Daughter stated that Ward threatened her life when she confronted him with her concerns, and that she believed that he posed a danger to himself and was unable to manage his personal and financial affairs.

The probate court appointed Daniel C. Shumake as the guardian ad litem on January 19, 2005, finding that Ward was a disabled individual. On that same day, the court also entered a temporary restraining order, enjoining and restraining Ward from leaving the mental health facility where he was currently located. Wife received notice of the pending February 4, 2005 hearing concerning the appointment of a conservator for Ward via certified mail. Wife then filed a motion for stay or continuance of the conservatorship proceedings on February 2, 2005. On February 4, 2005, the court entered the guardian ad litem's report, which stated, in part, as follows:

> Respondent is 62 years old, and although married has been estranged from his second wife, Patsy, for the past four years. He has four children from his first marriage. [Ward] resided with [Daughter] at her home in Cordova, Tennessee for the past four years. He moved out of [Daughter's] home after he purchased a home near Pickwick Lake in November, 2004. There are conflicting reports as to whether [Ward] lived alone in the Pickwick home or with [Wife].
>
> [Ward] has diabetes, and has been diagnosed with bi-polar condition that required hospitalization in 2001.

-2-

The purchase of the Pickwick home in November coincides with the start of a period in [Ward's] life that has been described as manic, and has been evidenced by an unusual frequency of major purchases including several automobiles and watercraft, along with several real properties in various stages of contract status. During this time, he liquidated his 401(k) Plan account that had a value of approximately $200,000.

[Ward] came to be [currently] admitted to the hospital in Mountain Home, Arkansas under the following situation: [Ward] intended to visit the cabin of a relative . . . and shortly after arriving at the property his truck got stuck in the mud. . . . [Ward] called on a neighbor for assistance. The neighbor, unable to make sense of what [Ward] was trying to convey, called the police. . . . [Ward] asked the police to 'lock him up' in order to protect him from the CIA and Traveler's Insurance, who was out to harm him for making a large withdrawal from his 401(k) Plan.

The guardian ad litem report indicated that Ward referred to Wife as his "estranged wife."

The probate court held a hearing on February 4, 2005, to address Daughter's petition for appointment of a conservator, Wife's motion for stay or continuance, and the report of the guardian ad litem. In the order entered that same day, the court appointed Daughter as the temporary conservator of Ward's person. The order specifically forbade Daughter from interfering with Wife's communications and visits with Ward. The order also authorized the guardian ad litem to make temporary emergency payments out of Ward's funds for the necessary support of Wife.

The guardian ad litem entered a supplemental report on February 25, 2005, adding the following updated overview, in relevant part:

[Ward's] recent family life reflects his bipolar condition: his Cordova life consisted of his living with [Daughter] and caring for his children, and was open and obvious; his Rienzi, MS life was carried out in secret without his blood family's knowledge, and consisted of daytrips to spend time with [Wife]. These visits occurred regularly once a week for the past few years, and overnight stays only when [Ward's] children were themselves out of town. [Ward] has told his family (and your Guardian Ad Litem) he has only sympathy for his wife and wants a divorce but will not pursue it; [Ward] tells [Wife] he loves her, and he spends time with her and supports her financially, but tells her his children are his first priority.

[Ward] appears to be caught between his love for his children and siblings and his need for a companion. Although your Guardian Ad Litem has not discovered anything specific as to why [Ward's]

family does not care for [Wife], there is a mutual distrust between [Wife] and the children. Your Guardian Ad Litem gets the sense that the children blame [Wife] in part for [Ward's] spending excesses. [Wife] feels that the children do everything they can to keep [Ward] from seeing her. . . . The individuals on each side of the dispute share a deep and true concern for [Ward's] well-being and happiness.

It is the opinion of your Guardian Ad Litem that [Ward] cares for his wife more than he will state publicly. He has shown this by his pattern of visiting and supporting his wife so consistently over the past few years.

The guardian ad litem made the following recommendations: "In light of the need to provide for [Ward's] healthcare needs . . . the Conservator should have complete control over the primary portion of [Ward's] income, and over all of the assets." The report also recommended that an attorney and independent party, Ron Nance, be appointed as the conservator of the property. The report reiterated that Daughter should be appointed conservator of the person. As to the findings concerning Wife's financial situation, the guardian ad litem reported as follows:

[Wife] maintains that her monthly income is approximately $500. Once the Pickwick house is sold and the Buick [purchased for Wife by Ward] traded for a more sensible automobile, her monthly expenses appear to be approximately $2,200 per month. Your Guardian Ad Litem would support a plan under which . . . ($1,480) is paid to [Wife] to meet those expenses of hers that [Ward] traditionally paid prior to the Conservatorship . . . . In addition, Your Guardian Ad Litem recommends that an additional amount of $1,000 per year for vacation and Christmas be paid to [Wife] . . . .

The court appointed Daughter as the interim conservator over Ward's person on March 11, 2005, and appointed Mr. Nance as the interim conservator of Ward's estate. The court also found that Wife was a co-obligor with Ward on several purchases, including a note for the purchase of a 2004 Buick Park Avenue vehicle, and on two notes secured by the Pickwick properties. The court ordered Mr. Nance to attempt to void these obligations and/or sell the vehicle, but in the meantime, he was to continue making payment on these obligations. The court also ordered that Wife was to receive temporary support in the amount of $1,670 a month and was to receive payment for items Ward purchased using several of her charge cards. Wife's monthly support payment would later increase to $2,000 a month beginning October 1, 2005. On May 12, 2005, Mr. Nance submitted to the court the property management plan, noting that "there have been an extraordinary number of transactions entered into by this ward during November & December, 2004, which have significant impact on this ward's financial condition. All of these financial transactions have not been totally resolved as of this date."

On July 20, 2006, Wife petitioned the court for an award of her attorney's fees in the amount of $28,663.36, stating that "it was necessary for the spouse of the ward to have legal counsel to protect her interest on numerous issues related to and arising from this conservatorship. These issues include, but are not limited to, the disposition of marital property, debts on which she was jointly liable with the Ward, and issues pertaining to her spousal support." On August 21, 2006, the probate court heard Wife's petition for attorney's fees. Wife testified that she is permanently disabled and is unable to work and that she receives around $350 a month in Social Security disability and $150 a month from a previous employer. Other than Wife using this $500 income, she testified that Ward paid all her expenses until around December, 2004, when Ward "disappeared." Husband also provided for Wife's medical expenses under his health insurance, and paid any amounts that were not covered by insurance. Wife testified as to her credit card bills and the fact that Ward paid those bills while the two were still together. Ward once asked Wife for a divorce around the spring of 2000, but Ward never filed for divorce. Wife testified that around November 25, 2002, Ward moved out of Wife's home and moved into Daughter's home in Cordova, Tennessee. Unbeknownst to Daughter and the rest of Ward's family, Ward continued to visit and support Wife.

The court entered the order denying Wife's request for attorney's fees on September 26, 2006. The court found that Ward's estate had an approximate value of $156,000, not including the potential tax liability resulting from Ward's early withdrawal of his 401K. The court found that Ward's conservatorship had already paid Wife $37,814.54, and that Wife would receive an additional $2,000 per month in spousal support. The remainder of the order, labeled by the court as "conclusions of law," states as follows:

1. The applicable statutes are Tennessee Code Annotated sections 34-3-109 and 34-1-114.
2. Tennessee Code Annotated section 34-3-109 provides the Court with jurisdiction over a disabled person to establish financial support to support the spouse. *The Court has determined that has been done.*
3. Tennessee Code Annotated section 34-1-114 provides the Court with jurisdiction to award attorney's fees for the guardian ad litem and attorney's fees for counsel of the petitioner if a petitioner is appointed . . . .

. . .

6. [T]he Court finds no basis to reimburse [Wife] for her contractual obligation to pay her attorneys.
7. The attorney's fees . . . are based upon a contract between the two attorneys and [Wife] and are not [Ward's] responsibility.
8. *This Court does not find it has the authority to award attorney's fees to the spouse of the Ward.*

(emphasis added) Wife thereafter filed this timely appeal.

## II. ISSUES PRESENTED

Appellant presents the following two issues for review, which we slightly reword:

1.  Whether the probate court had authority pursuant to Tenn. Code Ann. § 34-3-109 to award Wife her attorney's fees?
2.  Whether the probate court erred by refusing to award Wife her attorney's fees because such expenses are necessary and thus, could be included in the spousal support award pursuant to Tenn. Code Ann. § 34-3-109?

## III. STANDARD OF REVIEW

We review a trial court's findings of fact *de novo* with a presumption of correctness. We will only overturn these factual findings if the evidence preponderates against them. Tenn. R. App. P. 13(d) (2006); *In re F.R.R., III*, 193 S.W.3d 528, 530 (Tenn. 2006). The evidence preponderates against a trial court's finding of fact when it supports "another finding of fact with greater convincing effect." On the other hand, we review the trial court's conclusions of law *de novo* with no presumption of correctness. *Union Carbide Corp. v. Huddleston*, 854 S.W.2d 87, 91 (Tenn. 1993) (citing *Estate of Adkins v. White Consol. Indus., Inc.*, 788 S.W.2d 815, 817 (Tenn. Ct. App. 1989)). Statutory construction is a question of law, and thus we do not afford the lower court's judgment a presumption of correctness. *Kyle v. Williams*, 98 S.W.3d 661, 664 (Tenn. 2003) (citations omitted).

## IV. DISCUSSION

We begin with the first issue of whether the probate court had the statutory authority to award the non-petitioning spouse her attorney's fees pursuant to Tenn. Code Ann. § 34-3-109. Daughter argues that Tenn. Code Ann. § 34-1-114 governs the award of attorney's fees, and that Wife is not one of the listed parties eligible for an award of attorney's fees. We agree with Daughter.

Our job in interpreting statutory provisions is to ascertain and give effect to the legislature's intent. *Parker v. Parker*, No. E2004-00429-COA-R3-CV, 2005 WL 1277839, at *2 (Tenn. Ct. App. May 31, 2005) (quoting *Kyle v. Williams*, 98 S.W.3d 661, 664 (Tenn. 2003)). "Indeed, to ascertain and give effect to the intention and purpose of the legislature is the basic rule of statutory construction." *Faust v. Metropolitan Government of Nashville*, 206 S.W.3d 475, 490 (Tenn. 2006) (citation omitted). We must ascertain legislative intent "from the natural and ordinary meaning of the language used, without forced or subtle construction that would limit or extend the meaning of the language." *Id.* (quotation omitted). If the language is unambiguous, then we must apply the plain meaning with the presumption that "the legislature says in a statute what it means and means in a statute what it says." *Parker*, 2005 WL 1377839, at *2 (quoting *Kyle v. Williams*, 98 S.W.3d 661, 664 (Tenn. 2003)).

Turning back to the statute in question, Tenn. Code Ann. § 34-3-109 reads as follows:

> The appointment of a conservator for a disabled person does not automatically terminate the duty of the disabled person to support such disabled person's spouse or dependent minor children. The court having jurisdiction over the disabled person *may establish the amount of financial support to which the spouse or dependent minor children are entitled.*

(2001) (emphasis added). Clearly, the lower court has the discretion to award financial support to the spouse of a disabled individual. Wife would have us read Tenn. Code Ann. § 34-3-109, however, in isolation from Tenn. Code Ann. § 34-1-114, but we must look to the statutory provisions as a whole. The Middle Section of this Court has explained this statutory rule of construction as follows:

> The rule relative to '*pari materia*' construction applies . . . with equal force to separate provisions within a single statute. The different parts of a statute reflect light upon each other, and statutory provisions are regarded as *in pari materia* where they are parts of the same act. Hence, a statute should be construed in its entirety, and as a whole. All parts of the act should be considered, and construed together. It is not permissible to rest a construction upon any one part alone, or upon isolated words, phrases, clauses, or sentences, or to give undue effect thereto. The legislative intention, as collected from an examination of the whole as well as the separate parts of a statute, is not to be defeated by the use of particular terms.

*Faust*, 206 S.W.3d at 490. Thus, we turn to Tenn. Code Ann. § 34-1-114, which provides for the award of attorneys fees as follows:

> (a) *If a fiduciary is appointed*, the costs of the proceedings, which are the court costs, *the guardian ad litem fee*, the required medical examination costs *and the attorney's fee for the petitioner*, shall be charged against the property of the respondent to the extent the respondent's property exceeds the supplemental security income eligibility limit. If no fiduciary is appointed, the costs of the proceedings shall be charged against the petitioner. The guardian ad

litem fee and the attorney's fee for the petitioner shall be established
by the court. . . . .

(2001). The statute goes on to provide, in a different section, for the award of attorney's fees for the attorney ad litem: "The cost of the attorney ad litem shall be charged against the assets of the respondent." Tenn. Code Ann. § 34-1-125(b) (Supp. 2006). Thus, the statute specifically lists three parties who may recoup their attorney's fees. Looking to the plain language of the statutory scheme, we find that it does not provide for an award of attorney's fees to a non-petitioner spouse of a disabled individual. Awarding such a spouse attorney's fees under § 34-3-109 would circumvent the legislative intent of § 34-1-114. We must presume that the legislature "meant what it said" when it listed three parties as eligible for an award of attorney's fees.

In **Parker v. Parker**, No. E2004-00429-COA-R3-CV, 2005 WL 1277839, at *2 (Tenn. Ct. App. May 31, 2005), the Eastern Section of this Court dealt with a similar issue. In that case, a child filed a petition for the appointment of a conservator, naming his father as the respondent. *Id.* at *1. The father hired counsel, and the court dismissed the petition. The father then filed a motion for costs of the proceedings, requesting that the child, as the unsuccessful petitioner, be responsible for the father's attorney's fees pursuant to Tenn. Code Ann. § 34-1-114. The Eastern Section held that if the legislature had meant that the phrase "the costs of the proceedings shall be charged against the petitioner" also included attorney's fees, "then the legislature would have expressly included such language, as it did in the previous sentence . . . ." *Id.* at *2. Likewise, in the present case, if the legislature meant that the phrase "financial support" encompassed the spouse's attorney's fees, then the legislature could have simply said so. In sum, the plain language of the statutory scheme does not provide for the award of attorney's fees to the non-petitioner spouse of the disabled individual. Because of the aforementioned holding, we need not address Appellant's second issue.

## V. Conclusion

For the aforementioned reasons, we affirm. Costs of the appeal are assessed against Appellant, Patsy L. Aldridge, and her surety for which execution may issue if necessary.

_____

ALAN E. HIGHERS, P.J., W.S.