**Jerri Faye Andrews GILLEY, Plaintiff/Appellee,**

v.

**Leonard Marion GILLEY, Defendant/Appellant.**

Court of Appeals of Tennessee, Western Section.

July 13, 1989.

Permission to Appeal Denied by Supreme Court Oct. 2, 1989.

Bruce D. Brooke, Neely, Green, Fargarson & Brooke, Memphis, for defendant/appellant.

Daniel Loyd Taylor and Susan V. Shelton, Fisher, Taylor & Warlick, Memphis, for plaintiff/appellee.

HIGHERS, Judge.

This divorce appeal comes to us from the Circuit Court at Shelby County where Jerri Faye Andrews Gilley (wife) was granted a divorce from Leonard Marion Gilley (husband), and property was divided in accordance with a reconciliation agreement.

The parties were married in September of 1978, husband having survived his first wife, wife having divorced her first husband, and both having children from their previous marriages. In the fall of 1981, wife began to detect indicia of infidelity by husband such as indifference toward wife, failure to come home some nights, and lipstick and make-up on his shirts. Husband denied any extra-marital affairs but in January of 1984, wife hired a detective who observed husband hugging and kissing a female in a car parked at the rear of an elementary school. Wife filed for divorce, but that complaint was dismissed by wife in May of 1984 when, after being confronted with the evidence against him, a penitent husband promised future fidelity.

In November of 1984, wife again became suspicious when the warning signs of infidelity recurred. The detective again confirmed wife's suspicions when he observed husband hugging and kissing a woman in the public library. Husband was also observed hugging and kissing a woman, with whom he had traveled to Atlanta, in the lobby of their hotel. The two were also observed entering her hotel room where they stayed for two-and-one-half hours. Husband again denied involvement with another woman until confronted with the evidence against him. Wife again filed a complaint for divorce.

At the urging of husband, wife offered him a reconciliation agreement drafted by her attorney which husband signed in September of 1985 after making a change in the agreement. The agreement as signed provided that in the event of divorce husband would convey to wife his interest in a corporation owned by the parties which owned and operated weight loss centers in Memphis. Further, husband was to receive certain assets worth about $74,000, and wife was to pay off all joint debts and receive 20% of his monthly income as alimony *in futuro*.

Husband's ability to remain faithful again proved lacking. The signs of infidelity appeared again, wife hired the detective again, and husband was again observed more than once parking, in the concupiscent sense of the word, with another woman. Wife once again filed for divorce in April of 1987 on the grounds of cruel and inhuman treatment. There is ample evidence independent of husband's extra-marital escapades to warrant a trial court in granting wife a divorce on the basis of cruel and inhuman treatment, and neither party has appealed the trial court's ruling as to the divorce itself. The issue on appeal is simply the enforceability of the reconciliation agreement in light of husband's assertions that it violated public policy, was without consideration, was obtained through coercion and duress, was unconscionable, and was negotiated in bad faith.

In our opinion, reconciliation agreements are in the nature of prenuptial or antenuptial agreements and should be generally governed by the same principles. Such agreements were for various reasons once viewed with disfavor, *see Kahn v. Kahn*, 756 S.W.2d 685, 694 (Tenn.1988), but in 1980 the Tennessee General Assembly passed a statute making them enforceable if "entered into freely, knowledgeably and in good faith and without exertion of duress or undue influences upon either spouse." T.C.A. § 36–3–501 (1984). The Supreme Court's opinion in *Kahn, supra,* indicates that prenuptial or antenuptial agreements are to be interpreted and enforced as any other contract. 756 S.W.2d at 695–6.

■ Husband asserts that the agreement was unenforceable because the division of property was inequitable in viola-

**864**

tion of T.C.A. § 36–4–121 (Supp.1988), thus encouraging wife to end marriage in violation of public policies favoring preservation of marital relations. We disagree. As we see the agreement, its purpose was to encourage marital fidelity on the part of the husband by setting forth, prior to reconciliation, the outcome of a divorce should one occur after the reconciliation. The agreement in the present case is not of the type which gave rise to the policy asserted by husband. *See Hoyt v. Hoyt,* 213 Tenn. 117, 372 S.W.2d 300 (1963); *Crouch v. Crouch,* 53 Tenn.App. 594, 385 S.W.2d 288, 293 (1964). All the evidence indicates that wife's desire to preserve the marriage was genuine, and in fact the divorce came about through no fault of wife. It is not as if she procured the agreement on her own initiative and then maliciously brought about a divorce.

We find no merit to the assertion that the agreement was without consideration. Wife had several grounds upon which to prosecute a divorce, which she did not do at the husband's request, receiving promises of faithfulness secured by a property distribution, in the event of divorce, satisfactory to wife.

Neither is there merit to the assertion that the agreement was obtained through coercion or duress. Duress is a condition of the mind produced by improper external pressure or influence that destroys the free will of a person causing him to make a contract not of his own volition. *Simpson v. Harper,* 21 Tenn.App. 431, 111 S.W.2d 882, 886 (1937); *Pride v. Baker,* 64 S.W. 329 (Tenn.Ch.App.1901). Husband asks us to find duress in his "willingness to sign anything" to preserve his marriage. Perhaps husband was under duress due to the discovery of his own miscreant conduct, but in order for the agreement to be defeated, we must find legal duress. Whatever perceived pressures constrained him to sign the agreement against his free will were internal and of his own making, and whatever external pressures there may have been were not improper. The wife clearly had a legal basis and right to prosecute a divorce and did nothing improper in negotiating an agreement in consideration of forgoing her claim.

Finally, we find no negotiating in bad faith by wife. The genuineness of her desire to preserve the marriage is abundantly evidenced in the record. The fact that there were pecuniary consequences for husband's infidelity without more cannot be bad faith. *See generally Spurlock v. Brown,* 91 Tenn. 241, 18 S.W. 868 (1892).

We find no basis for reversal of the trial court's judgment; the trial court committed no error in enforcing the agreement as entered.

The judgment of the trial court accordingly is affirmed. Costs are taxed to the appellant.

TOMLIN, P.J. (W.S.), and CRAWFORD, J., concur.