IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
ASSIGNED ON BRIEFS FEBRUARY 20, 2008

## SARA K. RUDER v. JOSEPH R. RUDER

**Direct Appeal from the Circuit Court for Shelby County**
**No. CT-005572-05     Karen R. Williams, Judge**

**No. W2007-01222-COA-R3-CV - Filed September 26, 2008**

This is a divorce case involving the interpretation of a Prenuptial Agreement. Husband/Appellant appeals the trial court's decision to reimburse certain expenditures made by Wife as "improvements" to the marital home. Wife/Appellee appeals the trial court's denial of her request for attorney's fees. Finding no error, we affirm.

**Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Circuit Court Affirmed**

ALAN E. HIGHERS, P.J.,W.S., delivered the opinion of the court, in which HOLLY M. KIRBY, J. joined, and W. FRANK CRAWFORD, J. did not participate.

J. Steven Anderson, Memphis, TN, for Appellant

Margaret M. Chesney, Memphis, TN, for Appellee

**OPINION**

Joseph R. Ruder ("Husband," or "Appellant") and Sara K. Ruder ("Wife," or "Appellee") were married on June 26, 2004. This was the second marriage for Husband, and the third for Wife. Prior to the marriage, the parties entered into a Prenuptial Agreement (the "Agreement"), which Agreement was drafted by Wife's attorney.

On October 20, 2005, Wife filed a Complaint for Divorce in the Circuit Court at Memphis. On January 30, 2006, Husband filed his Answer and Counter-Complaint for Divorce. Attached as Exhibit "A" to Husband's Counter-Complaint was the Agreement. Wife served discovery on Husband and Husband objected to many of the Interrogatories and Requests for Production of Documents based upon the existence of the Agreement. In response, Wife filed a Motion to Compel. Prior to ruling on Wife's motion, the trial court determined that, in order to rule on whether Husband's objections were well founded, a hearing on the interpretation of the Agreement should be held. That hearing was held on May 25, 2006. Following the hearing, the trial court issued two Letter Rulings on August 1, 2006 and October 19, 2006 respectively. These Letter Rulings were incorporated into the trial court's "Order of May 25, 2006," which Order was entered on November 1, 2006.

On May 25, 2006, Husband filed a Motion for Interlocutory Appeal, which motion was denied. The parties then negotiated a settlement of all remaining issues, with the exception of Wife's request for attorney's fees. Following an in-chambers conference, the trial court determined that it would not grant attorney's fees to either party. A Marital Dissolution Agreement ("MDA") was subsequently executed by the parties, which MDA reserved the right to appeal the "Order of May 25, 2006" and the issue of attorney fees. The MDA was approved by the trial court and incorporated into the Final Decree of Divorce, which Decree was entered on May 7, 2007.

Husband appeals and raises seven issues as stated in his brief:

> 1. Did the trial court properly interpret and/or enforce the Prenuptial Agreement executed by the parties prior to their marriage?
>
> 2. Did the trial court err in only interpreting paragraphs 4 and 6 of the Prenuptial Agreement instead of interpreting the Agreement as a whole?
>
> 3. Did the trial court err in finding that Husband failed to deal fairly with Wife after the marriage?
>
> 4. Did the trial court err in ruling that Wife's monthly payments to Husband of $1,000.00 over a fourteen month period must be repaid by Husband pursuant to the terms of the Prenuptial Agreement?

5. Did the trial court err in finding that the funds voluntarily expended by Wife to make changes to Husband's home after the marriage must be repaid by Husband to Wife under the terms of the Prenuptial Agreement?

6. Did the trial court err in failing to find that certain terms of the Prenuptial Agreement were ambiguous and that such ambiguous terms should be construed in favor of Husband?

Wife raises the following additional issues in her brief:

1. Did the trial court err in denying an award of attorney's fees to Appellee considering that the attorney's fees were greatly increased due to Husband's failure to accept the trial court's May 25, 2006 Order?

2. Did the trial court err in denying an award of attorney's fees to Appellee considering that it took until November 14, 2006 for the May 25, 2006 Order to be entered, substantially due to Appellant's unwillingness to agree to the language in the order, despite the[re] being two clear letter rulings from the trial judge specifying what the order should include?

3. Did the trial court err in denying an award of attorney's fees to Appellee considering Appellant's lack of good faith in negotiations in the divorce proceeding following the entry of the Mary 25, 2006 Order?

This Court reviews findings of fact made by a trial court sitting without a jury under a *de novo* standard with a presumption of correctness for those findings, unless the preponderance of the evidence is otherwise. Tenn. R. App. P. 13(d) (2007). This Court reviews a trial court's conclusions of law *de novo* with no presumption of correctness. *Union Carbide Corp. v. Huddleston*, 854 S.W.2d 87, 91 (Tenn.1993) (citing *Estate of Adkins v. White Consol. Indus., Inc.*, 788 S.W.2d 815, 817 (Tenn.Ct.App.1989)). Furthermore, when the resolution of the issues in a case depends upon the truthfulness of witnesses, the trial judge who has the opportunity to observe the witnesses in their manner and demeanor while testifying is in a far better position than this Court to decide those issues. *See McCaleb v. Saturn Corp.*, 910 S.W.2d 412, 415 (Tenn.1995); *Whitaker v. Whitaker*, 957 S.W.2d 834, 837 (Tenn.Ct.App.1997). The weight, faith, and credit to be given to any witness's testimony lies in the first instance with the trier of fact, and the credibility accorded will be given great weight by the appellate court. *See id.*; *see also Walton v. Young*, 950 S.W.2d 956, 959 (Tenn.1997).

All of Husband's issues concern the trial court's interpretation of the Agreement entered by and between the parties. The relevant paragraphs of that Agreement read as follows:

4. **Distributions to or for Benefit of Wife**. Notwithstanding anything in this Agreement to the contrary, Husband does hereby agree that he will make appropriate provisions for the following:

(a) If Wife survives Husband, Wife will be permitted to continue to reside in the parties' residence at the time of Husband's death without any obligation to pay rent. Wife shall be responsible for the taxes, insurance and regular maintenance on the residence. At such time as Wife no longer continues to use the residence as her primary residence, the residence shall be sold by Husband's Executor. Upon the sale, Wife shall be repaid in full her investment in the residence. It is the intention of the parties that Wife will invest One Hundred Thousand Dollars ($100,000.00) in the residence from the sale of her own current personal residence by means of a principal payment in reduction of the principal balance of the first mortgage on the residence ("Wife's Investment"). It is agreed that any additional investment in the residence by Wife or any prepayment of her investment shall be set forth as a written addendum to this Agreement signed by the parties. It is further agreed that Wife's Investment shall be increased by the rate of appreciation from the date of the investment until repayment of the investment. The appreciation rate shall be based on the Consumer Price Index.

(b) In the event of a divorce, it is agreed that the residence shall be sold. In such event, the provisions of paragraph 4(a) shall apply to the disbursement of sales proceeds.

\*                                        \*                                        \*

6. **Transfer Between the Parties**. Notwithstanding the provisions of this Agreement, either party shall have the right to transfer or convey to the other any property or interest therein which may be lawfully conveyed or transferred during his or her lifetime or by Will or otherwise upon death, and neither party intends by this Agreement to limit or restrict in any way the right and power to receive any such transfer or conveyance from the other. In this regard, except as otherwise provided in writing, in the event that either party pays the debts or mortgages of the other, such payment shall be deemed a gift and shall not create any interest or claim by the payor thereof against the person or estate of the person obligated to make such payment.

T.C.A. § 36-3-501 (2005) states:

> Notwithstanding any other provision of law to the contrary, except as provided in § 36-3-502, any antenuptial or prenuptial agreement entered into by spouses concerning property owned by either spouse before the marriage that is the subject of such agreement shall be binding upon any court having jurisdiction over such spouses and/or such agreement if such agreement is determined, in the discretion of such court, to have been entered into by such spouses freely, knowledgeably and in good faith and without exertion of duress or undue influence upon either spouse. The terms of such agreement shall be enforceable by all remedies available for enforcement of contract terms.

It is well settled that Prenuptial Agreements are contracts. *See, e.g., Gilley v. Gilley*, 778 S.W.2d 862, 863 (Tenn. Ct. App.1989). As such, the language used in these agreements must be taken and understood in its plain, ordinary, and popular sense. *Bob Pearsall Motors, Inc. v. Regal Chrysler-Plymouth, Inc.*, 521 S.W.2d 578 (Tenn.1975). In construing contracts, the words expressing the parties' intentions should be given the usual, natural, and ordinary meaning. *Ballard v. North American Life & Casualty Co.*, 667 S.W.2d 79 (Tenn.Ct.App.1983). If the language of a written instrument is unambiguous, the Court must interpret it as written rather than according to the unexpressed intention of one of the parties. *Sutton v. First Nat'l Bank*, 620 S.W.2d 526 (Tenn.Ct.App.1981). A contract is not ambiguous merely because the parties have different interpretations of the contract's various provisions, *Cookeville Gynecology & Obstetrics, P.C. v. Southeastern Data Sys., Inc.*, 884 S.W.2d at 462 (citing *Oman Constr. Co. v. Tennessee Valley Authority*, 486 F.Supp. 375, 382 (M.D.Tenn.1979)), nor can this Court create an ambiguity where none exists in the contract. *Cookeville P.C.*, 884 S.W.2d at 462 (citing *Edwards v. Travelers Indem. Co.*, 201 Tenn. 435, 300 S.W.2d 615, 617-18 (1957)). The interpretation of a written contract is a matter of law and not of fact, *see Rainey v. Stansell*, 836 S.W.2d 117 (Tenn.Ct.App.1992). Therefore, we review the trial court's finding concerning the agreement between these parties *de novo* upon the record with no presumption of correction accompanying the trial court's conclusions of law. *See* Tenn. R.App. P. 13(d); *Waldron v. Delffs*, 988 S.W.2d 182, 184 (Tenn.Ct.App.1998); *Sims v. Stewart*, 973 S.W.2d 597, 599-600 (Tenn.Ct.App.1998).

We first note that, from our reading of the record, it does not appear that the trial court neglected to consider the Agreement as a whole. Rather, the trial court determined that the gravamen of the issues before it hinged upon an interpretation of paragraphs four and six of that Agreement. We have read the Agreement in its entirety and we agree that the trial court properly focused upon these clauses in reaching its decision. Husband further argues that the Agreement contains certain ambiguities, which should be construed in his favor given the fact that Wife's attorney drafted the document. Husband specifically contends that the use of the word "investment" in paragraph four is ambiguous as same is not defined in the Agreement. We disagree. When the Agreement is read as a whole, paragraph six addresses the payment of "debts or mortgages"; consequently, these types of payments would not be included in the term "investments." That being said, we interpret "investments" broadly to include any other monetary payments made toward such things as

improvements, remodeling, and repairs to the marital home.[1]  However, even if we were to assume, *arguendo*, that the term "improvements" is ambiguous (which we do not), by signing the Agreement, Husband acknowledged, pursuant to paragraph seventeen thereof, that he "has been given ample opportunity to retain separate counsel...and that neither party shall be construed as the drafter of this instrument."  Consequently, he is not entitled, under the plain language of the contract, to have any ambiguity resolved in his favor.

Both at trial, and on appeal, Husband argues that paragraph six of the Agreement governs the monies received from Wife.  As stated above, this paragraph addresses "debts or mortgages" paid by either party.  In the case of such payments, paragraph six indicates that these payments shall be "deemed a gift and shall not create any interest or claim by the payor thereof against the...person obligated to make such payment."  Having determined that the trial court correctly relied upon paragraph four of the Agreement, the resolution of the Husband's issues rests largely on the trial court's factual determinations.  The trial court determined that the monies expended by Wife did not constitute payments of "debts or mortgages"; consequently, paragraph six of the Agreement was not triggered.  This determination is one of fact and we will not disturb that finding absent error of law. ***See*** Tenn. R. App. P. 13(d).

There is no transcript of the hearing in this case.  Rather, this record contains two statements of the evidence.  The first, submitted by Husband, bears an illegible file stamp. The second, submitted by Wife as a response to Husband's statement of the evidence, contains a file stamp of September 28, 2007.  Neither statement of the evidence is signed by the trial court. Tenn. R. App. P. 24(e) provides, in relevant part:

> Any differences regarding whether the record accurately discloses what occurred in the trial court shall be submitted to and settled by the trial court regardless of whether the record has been transmitted to the appellate court.  Absent extraordinary circumstances, the determination of the trial court is conclusive.  If necessary, the appellate or trial court may direct that a supplemental record be certified and transmitted.

From the record before us, it appears that the parties did not comply with Tenn. R. App. P. 24(e).  In the interest of judicial economy, we will not delay our decision in order to direct a supplementation of the record pursuant to Tenn. R. App. P. 24(e). ***See*** Tenn. R. App. P. 2.  Even assuming that Husband's statement of the evidence is true and correct, it does not necessarily demonstrate that he is entitled to the relief he seeks on appeal.  Concerning the nature of the payments made by Wife, in its letter rulings, the trial court specifically found that: (1) Wife was not obligated to make a one-time payment of $100,000 from the proceeds of the sale of her house; rather, the fourteen payments of $1,000 each were made in compliance with this clause of the Agreement; (2)

---

[1] Webster's Ninth New Collegiate Dictionary defines "investment" broadly as "the outlay of money usually for income or profit."

-6-

Wife increased the value of the home by paying for capital improvements; (3) all payments made by Wife prior to the marriage are considered gifts; (4) all payments made after the marriage are not gifts; consequently, these post-marriage payments do not trigger paragraph six of the Agreement, *supra*. Attached as an Exhibit to the trial court's letter ruling is a spreadsheet listing Wife's expenditures and the dates thereof. Turning to Husband's statement of the evidence, we find nothing therein to preponderate against the trial court's findings on the nature of these expenditures. Consequently, we must affirm the trial court's factual findings.

Wife raises the additional issue(s) concerning the trial court's denial of her request for attorney's fees. The parties' MDA, signed on or about May 1, 2007, contains inconsistencies concerning the payment of attorney's fees. On page six of the MDA, the parties agree that, "[s]hould either party incur any legal fees in defending or prosecuting their rights under this provision, the court shall award reasonable attorneys' fees to the prevailing party." The "provision" referenced in this language, however, involves the parties' respective responsibilities for payment of certain debts and liabilities. Because the present litigation does not involve these specific responsibilities, this particular language concerning attorney's fees is not triggered. At page ten of the MDA, the parties specifically address the payment of attorney's fees and agree that "[e]ach party shall be responsible for his or her attorney's fees." This language appears to be in direct contravention of language used later on that page under "Right to Appeal Not Waived." In this clause, the parties agree that "the incorporation of the Marital Dissolution Agreement into the Final Decree of Divorce, shall not prevent the Wife from initiating and prosecuting an appeal for attorney's fees." From our reading, this language could be interpreted in two ways. First, it could be interpreted to reinforce the page six language, which allows either party to seek reimbursement for fees associated with the specific enforcement of the MDA. The reservation of the right to appeal could also be interpreted more broadly to allow Wife to pursue attorney's fees regardless of the agreement that each party will be responsible for his or her own fees. However, even if we give Wife this reading, the language used does not give Wife the absolute right to an award of her attorney's fees. Rather, it gives her the right to seek reimbursement of same. The decision to deny Wife's request for attorney's fees falls under the trial court's discretion and this Court will not reverse that decision absent an abuse of that discretion. *See, e.g., Langschmidt v. Langschmidt*, 81 S.W.3d 741, 751 (Tenn.2002). In the case of divorce, an award of attorney's fees constitutes alimony *in solido*. *See, e.g., Herrera v. Herrera*, 944 S.W.2d 379, 390 (Tenn.Ct.App.1996)). When determining whether to award attorney's fees, the trial court must consider the relevant factors regarding alimony set forth in T.C.A § 36-5-121(i), which factors include (but are not limited to) the following:

> (1) The relative earning capacity, obligations, needs, and financial resources of each party, including income from pension, profit sharing or retirement plans and all other sources;
> (2) The relative education and training of each party, the ability and opportunity of each party to secure such education and training, and the necessity of a party to secure further education and training to improve such party's earnings capacity to a reasonable level;
> (3) The duration of the marriage;

(4) The age and mental condition of each party;

(5) The physical condition of each party, including, but not limited to, physical disability or incapacity due to a chronic debilitating disease;

(6) The extent to which it would be undesirable for a party to seek employment outside the home, because such party will be custodian of a minor child of the marriage;

(7) The separate assets of each party, both real and personal, tangible and intangible;

(8) The provisions made with regard to the marital property, as defined in § 36-4-121;

(9) The standard of living of the parties established during the marriage;

(10) The extent to which each party has made such tangible and intangible contributions to the marriage as monetary and homemaker contributions, and tangible and intangible contributions by a party to the education, training or increased earning power of the other party;

(11) The relative fault of the parties, in cases where the court, in its discretion, deems it appropriate to do so; and

(12) Such other factors, including the tax consequences to each party, as are necessary to consider the equities between the parties.

We have reviewed these factors in light of the particular facts of this case and we do not conclude that the trial court abused its discretion in denying Wife's claim for attorney's fees.

For the foregoing reasons, we affirm the Order of the trial court. Costs of this appeal are assessed one-half to Appellant, Joseph R. Ruder, and his surety, and one-half to Appellee, Sara K. Ruder.

_____
ALAN E. HIGHERS, P.J., W.S.