# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
October 1, 2014 Session

## LORI KAY JONES TRIGG v. RICHARD DARRELL TRIGG

**Appeal from the Circuit Court for Hawkins County**
**No. 12CV150      Thomas J. Wright, Judge**

---

**No. E2014-00860-COA-R3-CV-FILED-JANUARY 5, 2015**

---

This is an irreconcilable differences divorce case. The trial court entered a final judgment of divorce that incorporated the parties' mediated marital dissolution agreement. Shortly thereafter, Husband filed a motion to set aside or to alter or amend the final judgment, claiming he was under duress when he entered into the marital dissolution agreement and also claiming that the trial court was required to conduct a hearing before entering the final judgment. The trial court disagreed and denied Husband's motion. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed and Remanded**

J. STEVEN STAFFORD, P.J., W.S., delivered the opinion of the Court, in which D. MICHAEL SWINEY, J., and KENNY ARMSTRONG, J., joined.

David W. Blankenship, Kingsport, Tennessee, for the appellant, Richard Darrell Trigg.

William H. Horton, Chattanooga, Tennessee, for the appellee, Lori Kay Jones Trigg.

## MEMORANDUM OPINION[1]

---

[1]Rule 10 of the Rules of the Court of Appeals of Tennessee provides:

This Court, with the concurrence of all judges participating in the case, may affirm, reverse or modify the actions of the trial court by memorandum opinion when a formal opinion would have no precedential value. When a case is decided by memorandum opinion it shall

(continued...)

## Background

Lori Kay Jones Trigg ("Wife") and Richard Darrell Trigg ("Husband") were married on April 30, 1988. No children were borne of the marriage. On April 12, 2012, Wife filed a complaint for divorce against Husband alleging irreconcilable differences and, alternatively, inappropriate marital conduct as the grounds for divorce. In her Motion for Temporary Alimony filed on May 1, 2012, Wife asserts that Husband "is a successful business man and has worked for Short Mountain Silica for twenty five years[. A]s of today's date he no longer workers [sic] there but has opened a personal business in the name of Trigg Engineering." Wife also stated that she was unemployed.

On June 21, 2012, Husband filed his answer to the complaint for divorce, denying that any grounds for divorce existed. Specifically, Husband stated that he "very much adores his Wife and because of this and his religious beliefs urges this Honorable Court not to allow the dissolution of their marriage."

Although not in the record, both parties reference an order of protection that existed to prevent Husband from contacting Wife. According to Wife's later Motion for Contempt with Notice filed on June 21, 2012 and her Second Motion for Contempt with Notice filed August 27, 2012, the order prevented Husband from "[c]ommunicating with [Wife] by telephone, mail, e-mail, fax, pager, notes or through third parties for any reason whatsoever." In the same motion for contempt, Wife stated that she "would show that Husband is in willful and malicious contempt of said order . . . as Husband has contacted her constantly and continuously to the point of harassment since the date of the Order of Protection through her cell phone and email account." Husband, in his Motion to Dismiss filed on December 11, 2012, claims that he did not intend to violate the order of protection, but he merely responded to Wife when she had initiated contact. Further, he asserts that he dutifully paid Wife spousal support of approximately $2,000.00 per month. Less than one month later, on January 2, 2013, Wife filed her Third Motion for Contempt claiming that Husband dissipated assets.[2]

_____

(.....continued)
be designated "MEMORANDUM OPINION", shall not be published, and shall not be cited or relied on for any reason in any unrelated case.

[2]The issues involved in Wife's three pre-divorce contempt petitions appear to be resolved by the entry of the final judgment of divorce. Neither party raises an issue regarding the disposition of any of these contempt petitions on appeal.

On January 9, 2013, the parties entered into a "Guaranty to Mediate and Sign Divorce Documents" ("Guaranty"). Both parties' signatures appear on the Guaranty along with their counsels' signatures. The Guaranty is a typewritten document; however, it is clear on the face of the document that the parties made several handwritten changes to its language. Several days later, on January 11, 2013, the parties entered into a Marital Dissolution Agreement ("MDA"). The MDA indicates that the ground for divorce is irreconcilable differences. Again, both parties' and their counsels' signatures appear on the document. Although the record is unclear as to when or whether the parties' participated in mediation, the MDA is styled "*Mediated Marital Dissolution Agreement*."

On March 5, 2013, the trial court entered the Final Judgment of Divorce, which incorporated the mediated MDA. The MDA indicates that both Husband and Wife were represented by counsel. Neither party appeared before the trial court before it entered the final judgment of divorce incorporating the MDA. However, both parties' counsel was present in the trial court and allegedly assented to the entry of the final judgment.

On April 3, 2013, Husband filed a Motion for New Trial or in the Alternative a Motion to Alter or Amend the Final Judgment. Husband argued that the divorce judgment should be set aside because the trial court did not conduct a formal hearing before entering the judgment. Additionally, in the same motion, he asserted that Wife did not have the capacity to agree to a divorce.[3] Last, he claimed that the MDA was invalid because he was coerced into signing it. In support of his motion, Husband also submitted an affidavit to the trial court.

On April 4, 2013, Wife filed a Motion to Set Aside the Final Judgment of Divorce or in the Alternative Motion to Amend the Final Judgment to an Order of Legal Separation. In her motion, she states:

> 3. That before the entry of Final Judgment of Divorce, the parties had actually reached an agreement to remain married and instead be declared Legally Separated.
>
> 4. That the Husband has agreed to keep Wife on his health insurance policy for so long as his policy permits.

---

[3]We note that Husband's motion and affidavit included additional allegations. However, Wife filed a motion to strike those allegations on May 10, 2013. *See infra*. Husband's brief does not appear to appeal the trial court's grant of Wife's motion to strike. *See **Childress v. Union Realty Co.**, 97 S.W.3d 573, 578 (Tenn. Ct. App. 2002) (noting that alleged errors not raised as issues in the appellant's brief are considered waived on appeal). Thus, we omit the stricken allegations from this Opinion.

5. That Wife's health is such that would prevent her from obtaining her own health insurance policy, and she desires to remain legally married but separated to Husband, and she believes he is in agreement with staying married.

A few days later, on April 12, 2013, Wife then filed her Motion to Enforce the *Mediated Marital Dissolution Agreement* and/or Motion for Contempt of Final Judgment of Divorce. In this motion, Wife alleged that Husband "is in willful and malicious contempt of court by failing to place the home on the real estate market and selling the home within ninety days of said agreement." On April 26, 2013, Husband filed a response to Wife's motion. He argued that his pending Motion for New Trial or in the Alternative a Motion to Alter or Amend Judgment stayed any other motions related to the MDA.

On May 10, 2013, Wife filed her Response to Husband's Motion for New Trial or in the Alternative Motion to Alter or Amend Judgment. She cited no law, but she denied all the material allegations contained in Husband's motion.

Also on May 10, 2013, Wife filed a Motion to Strike Pursuant to Rule 12.06 of the Tennessee Rules of Civil Procedure. Wife's motion requested that the trial court strike Husband's entire supporting affidavit that he submitted with his Motion for New Trial or to Alter or Amend. She also requested the trial court strike any reference to the affidavit's allegations in Husband's motion. She alleged that the affidavit contained "redundant, immaterial, impertinent, and/or scandalous matters and information." Further, she stated Husband provided that information with "complete and utter disregard to [Wife] and her family and [it] contains false, malicious accusations and statements." On May 20, 2013, Husband, in his Response to Wife's Motion to Strike, denied that the allegations were false.

Several months later, on November 27, 2013, the trial court entered an order continuing the proceedings and directing the parties to mediate the dispute. The order further provides that if mediation should fail, "then the parties will return to this Court on a date to be agreed upon to argue the various pending motions of both the defendant and the plaintiff." Husband was also ordered to continue paying for Wife's health insurance pending an agreement in mediation addressing that issue. Finally, the trial court's order provides: "All other matters are reserved for argument before this Court unless addressed [in] a mediation agreement and subsequent order."

The record does not reflect whether the parties actually participated in mediation. Regardless, on February 21, 2014, the trial court held a hearing on Husband's Motion for New Trial or in the Alternative a Motion to Alter or Amend Judgment and on Wife's Motion to Enforce *Mediated Marital Dissolution Agreement* and/or Motion for Contempt of Final

Judgment of Divorce. At the hearing, Wife's counsel announced she was withdrawing her Motion to Set Aside the Final Judgment. Thus, the only motions argued at the hearing were:

- Husband's Motion for New Trial or in the Alternative a Motion to Alter or Amend Judgment;
- Wife's Motion to Enforce *Mediated Marital Dissolution Agreement* and/or Motion for Contempt of Final Judgment of Divorce; and
- Wife's Motion to Strike Pursuant to Rule 12.06.

The trial court took Husband's motion under advisement. At the hearing, Wife's counsel orally stayed Wife's Motion to Enforce the *Mediated Marital Dissolution Agreement* and/or Motion for Contempt of Final Judgment of Divorce. Last, the trial court orally granted Wife's Motion to Strike Pursuant to Rule 12.06.

On April 10, 2014, the trial court denied, by written order, Husband's Motion for New Trial or in the Alternative a Motion to Alter or Amend Judgment. The trial court first addressed Husband's contention that the divorce judgment must be set aside. The court found it was not required to conduct a formal hearing because "the plain language of T.C.A. § 36-4-103 does not require any formal hearing and specifically states that the decree can be entered without 'corroborative proof or testimony,' and that 'the petitioner shall not be required to testify as to the facts constituting irreconcilable differences . . .'" The court then turned to Husband's argument that the divorce judgment should be set aside because he was under duress and was coerced into signing the MDA. The court noted that "[n]o proof was presented at the hearing on the motion." Thus, the trial court ultimately found that Husband was not coerced into signing the MDA. Husband timely filed this appeal.

This Court determined by order dated November 7, 2014 that it did not have jurisdiction because the judgment from the trial court was not a final judgment. Specifically, the order noted that three motions were still pending (i.e. lacked written orders disposing of them) at the time Husband filed his appeal, including:

- Wife's Motion to Set Aside Final Judgment of Divorce, or in the Alternative, Motion to Amend Final Judgment to Order of Legal Separation;

- Wife's Motion to Enforce *Mediated Marital Dissolution Agreement* and/or Motion for Contempt of Final Judgment of Divorce; and

- Wife's Motion to Strike Pursuant to T.R.C.P. 12.06.

The parties, by way of their Agreed Order entered November 18, 2014, unsuccessfully attempted to address the issues discussed in our November 7, 2014 Order. On December 8, 2014, this Court entered another order stating that the parties' Agreed Order failed to finalize the judgment. Our December 8, 2014 Order stated:

> On November 26, 2014, the Court conducted a conference call with the attorneys for the parties regarding the action to be taken to finalize the judgment of the trial court. To date no order has been entered. Consequently, the parties are allowed ten (10) days from the entry of this order to obtain and file a final judgment in this case . . . [or] this appeal may be dismissed without further notice.

On December 18, 2014, the parties entered an order disposing of the three remaining motions and finalizing the judgment. In the Agreed Order entered December 18, 2014, the trial court memorialized the dispositions of the following pending motions:

- Wife's Motion to Set Aside, or in the Alternative, Motion to Alter or Amend was withdrawn;

- Wife's Motion to Enforce *Mediated Marital Dissolution Agreement* and/or Motion for Contempt was withdrawn without prejudice to refiling; and

- Wife's Motion to Strike was granted.

We conclude that the judgment of the trial court has been finalized with the filing of the parties supplemental Agreed Order entered December 18, 2014. Accordingly, we proceed to the substantive issues in this appeal.

**Issues**

Husband presents two issues for review on appeal, which we restate slightly:

> 1. Whether the trial court erred in declining to set aside the divorce judgment and MDA on the ground that Husband was coerced or subjected to duress while executing the divorce documents?

2. Whether the trial court erred in declining to set aside the divorce judgment on the ground that it did not conduct a formal hearing prior to entering the divorce judgment?

## Standard of Review

Because Husband's motion was filed within thirty days of the entry of the divorce judgment, it is properly termed a motion to alter or amend the judgment pursuant to Tennessee Rule of Civil Procedure 59.04.[4] We review a trial court's ruling on a motion to alter or amend a judgment under Rule 59.04 for an abuse of discretion. *Stovall v. Clarke*, 113 S.W.3d 715, 721 (Tenn. 2003); *Linkous v. Lane*, 276 S.W.3d 917, 924 (Tenn. Ct. App. 2008). A trial court abuses its discretion only when it has "applied an incorrect legal standard, or reached a decision which is against logic or reasoning that caused an injustice to the party complaining." *Henry v. Goins*, 104 S.W.3d 475, 479 (Tenn. 2003).

## Coercion and Duress[5]

Before we can address whether the trial judge erred in declining to conduct a hearing before granting the divorce, and thereby incorporating the MDA into the final decree, we must determine whether the Guaranty and the MDA were valid when they were purportedly entered. As such, we must determine whether Husband was under duress or was coerced when he executed the MDA and the Guaranty.

As an initial matter, we note that a marital dissolution agreement "is a contract and as such generally is subject to the rules governing construction of contracts." *Barnes v. Barnes*, 193 S.W.3d 495, 498 (Tenn. 2006) (quoting *Johnson v. Johnson*, 37 S.W.3d 892 (Tenn. 2001)). This is consistent with Tennessee law's treatment of other agreements made

---

[4]Husband's Motion indicates that he intended to bring his motion pursuant to Tennessee Rules of Civil Procedure 59 and Rule 60. However, because Husband filed his motion within thirty days of the entry of the divorce judgment, it was not a "final judgment" to which Rule 60 applies. *Ferguson v. Brown*, 291 S.W.3d 381, 387 (Tenn. Ct. App. 2008) ("When Plaintiff's motion was received and filed by the clerk's office, the judgment was not yet a final, non-appealable judgment. Accordingly, Rule 59.04 is the applicable rule."). Both Rule 59 and Rule 60 motions are reviewed under the abuse of discretion standard. Consequently, the label on Husband's motion has no bearing on this appeal.

[5]Husband uses the terms "coercion" and "duress" interchangeably. "Coercion is generally considered to be synonymous with duress." *Davenport v. Home Fed. Bank of Tenn., F.S.B.*, No. 03A01-9401-CV-00034, 1994 WL 287591 (Tenn. Ct. App. June 30, 1994) (citing *Black's Law Dictionary* 504 (6th ed. 1990); *The American Heritage Dictionary of the English Language* 405 (New College ed. 1978)).

during the course of, and after, marriage. *Id.* Indeed, the parties' MDA in this case states that "even if this [MDA] is incorporated into the *Final Judgment of Divorce*, it will remain contractual in nature such that it can be enforced under the law of contract." Typically, agreements made respective to marriage will be considered valid and enforceable contracts absent a showing of fraud or coercion. *Matthews v. Matthews*, 148 S.W.2d 3, 11 (Tenn. Ct. App. 1940). "Duress is a condition of the mind produced by improper external pressure or influence that destroys the free will of a person causing him to make a contract not of his volition." *Gilley v. Gilley*, 778 S.W.2d 862, 864 (Tenn. Ct. App. 1989) (citing *Simpson v. Harper*, 111 S.W.2d 882, 886 (Tenn. Ct. App. 1937); *Pride v. Baker*, 64 S.W. 329 (Tenn. Ct. App. 1901)).

In this case, both parties signed the Guaranty and the MDA, both parties were represented during the mediation, and both parties' counselors appeared before the trial court entered the final judgment of divorce, which incorporated the MDA. Despite the trial court's finding, in his appellate brief, Husband asserts that "[t]he [MDA] provided that the orders of protection and the violations thereof would be dismissed if I executed the [MDA]. I was coerced into signing the [MDA] because the pending orders of protection were leveraged against me." As further support, Husband points out that the order of protection against Husband was dismissed the day before the trial court granted the divorce.

In his appellate brief, Husband relies heavily on the allegations in his affidavit. Husband's brief reiterates that his affidavit was "unrefuted." However, we note again that Wife filed a motion to strike Husband's supporting affidavit and related parts of his motion, which the trial court granted on December 8, 2014. Husband did not appeal this ruling. Accordingly, we decline Husband's invitation to recall the facts as stated in Husband's stricken affidavit and related parts of his original motion. In *Akins v. Tedder*, No. 87-227-II, 1988 WL 109150, at *2 (Tenn. Ct. App. Oct. 21, 1988), Justice Koch, then writing as Judge for the Court of Appeals, opined that the Court of Appeals has appellate jurisdiction only. "We may not properly base our decisions on evidence neither considered by the trial court nor contained in the record on appeal." *Id.* (citations omitted). Tennessee Rule of Appellate Procedure 13(c) also provides that we "may consider those facts established by the evidence in the trial court and set forth in the record . . . ." As Husband never appealed the trial court's order to strike his affidavit from the record, we cannot properly base our decision on the facts alleged in the affidavit. *Id.* Further, allegations and statements of counsel, such as those in Husband's appellate brief, are not evidence. *Elliot v. Cobb*, 320 S.W.3d 246, 250 (Tenn. 2010) (citing *Metro. Gov't of Nashville & Davidson Cnty. v. Shacklett*, 554 S.W.2d 601, 605 (Tenn. 1977); *Hathaway v. Hathaway*, 98 S.W.3d 675, 681 (Tenn. Ct. App. 2002).

To support his argument that he was under duress when he signed the MDA and Guaranty, Husband first cites *Pride v. Baker*, 64 S.W. 329 (Tenn. Ct. Ch. App. 1901), for the

proposition that: "Duress under the decisions means a **condition of mind** produced by the improper external pressure or influence that practically destroys the free agency of a party and causes him to do an act or make a contract not of his own will but under such wrongful external pressure." (Emphasis added.) *Id.* at 332. Husband argues that the principles in *Pride* require us to hold his state of mind as the utmost consideration when reviewing his allegations of duress. However, upon our review of *Pride*, we find state of mind is only one consideration, and not the focus of *Pride* as Husband suggests. While Husband is correct that the *Pride* Court did opine the foregoing cited language, the remainder of the passage from which Husband cites directs us to analyze "whether such external pressure of influence is sufficient to destroy the free agency of a party is a question to be determined by the age, sex, intelligence, experience, and force of will of a party, the nature of the act, and all the attendant facts and circumstances." *Id.* In its order on Husband's motion to alter or amend the final judgment, the trial court stated:

> [Husband] is a sophisticated, middle-aged, engineer and business executive who has both a bachelors and a masters degree. He was represented at the time of the alleged coercion by one of the most experienced and able litigators in Tennessee. . . . Moreover, the MDA he seeks to set aside was entered into on a later date [after the Guaranty to Mediate and Sign Divorce Documents], after mediation, with the assistance of counsel, and is far from one-sided. . . . Actually seems favorable to the husband.

We cannot conclude that the trial court abused its discretion in finding that Husband, who was a sophisticated party, entered into the MDA absent duress. Further, we can distinguish Husband from the *Pride* plaintiff, an "inexperienced country girl, just shortly arrived at age, and . . . mourning over the death of her father," *Pride*, 64 S.W. at 332, because, *inter alia*, Husband owns his own engineering firm, has both a bachelors and masters degree, and was represented by counsel throughout the proceedings at issue.

We further find *Pride* distinguishable from the case at bar because the external pressure Husband faced was not "improper" or "wrongful," like the plaintiff in *Pride* experienced. *See Pride*, 64 S.W. at 332 (referring to duress as involving an "improper" or "wrongful" external pressure). In *Pride*, the then-Court of Chancery Appeals of Tennessee held a woman's conveyance of a deed invalid, opining that:

> [W]e are reasonably satisfied, and so find as a fact, that complainant Rachel executed the deed in question . . . by fear that, if she attempted to keep all the property under the will of

her father, **she was in danger of being killed, or of great bodily harm at the hands of her brother Tom.** . . . To hold that the deed of this inexperienced country girl, just shortly arrived at age, and executed under the facts stated while in mourning over the death of her father, should stand against her, would, in our opinion, violate the just and settled principles of equity applicable to such a case.

*Id.* (emphasis added).

In this case, Wife was within her rights under Tennessee law to seek and enforce the order of protection. *See* Tenn. Code Ann. § 36-3-602, *et seq.* As there is no evidence in the record to demonstrate that Wife sought the order of protection for any improper or wrongful purpose, we cannot conclude that her decision to seek and enforce the order of protection amounts to conduct that improperly or wrongfully coerced Husband's agreement to the MDA or Guaranty. Husband does not appear to argue that Wife was not entitled to seek the order or protection, nor does he argue that the trial court erred in granting Wife the order of protection. Interestingly, the record includes several instances where Husband admitted that he had contacted Wife, thus violating the order of protection. Accordingly, nothing in the record indicates that Wife sought the order of protection in bad faith. Moreover, a threat to enforce a lawfully obtained order of protection simply does not rise to the level of threats of bodily harm, as experienced by the plaintiff in ***Pride***. *See also **McClellan v. McClellan***, 873 S.W.2d 350, 352 (Tenn. Ct. App. 1993) (citing 86 C.J.S. *Threats & Unlawful Communication* §27 (1954) ("[T]he assertion of an intention to pursue a legal remedy ordinarily is not considered duress.")). Consequently, nothing in the record suggests that Wife used improper means to coerce Husband into signing the MDA, as was found in ***Pride***. Thus, the situation presented in this case is simply not analogous to ***Pride***.

In his brief, Husband also cites ***Simpson v. Harper***, 111 S.W.2d 882 (Tenn. Ct. App. 1937), a case where we held that the defendant was under duress, and thus not liable on a note she signed, when she was threatened with bad faith threats of criminal prosecution against her husband. *See generally **id.*** In ***Simpson***, the defendant, Mrs. Harper, "admitted that she had signed her name as an indorser on the note described in complainant's bill . . . but she alleged that her signature as an indorser on said note and its delivery to the payee were obtained and procured by such false and fraudulent representations . . . ." ***Id.*** at 884. Mrs. Harper's husband asked her to sign the note "after there had been an embezzlement of funds belonging to the bank by the partnership of which her husband was a member . . . [U]pon [a] statement from the Vice President of the bank, she signed the note and [] her signature thereto was obtained by duress and fear, that her husband would suffer criminal prosecution." ***Id.*** Mrs. Harper, who was not a member of her husband's partnership, signed

the note when she was told her Husband would suffer criminal prosecution because "she did not dream that [the bank's Vice President] as executive of a bank, would tell me anything like that and it not be true. I didn't doubt his word for one minute." *Id.* at 889. However, as the *Simpson* court noted, Mr. Harper was not actually subject to any criminal prosecution. *Id.* at 892. "Although he was civilly liable for the debts of the partnership, he was not criminally liable for the unlawful acts of a partner done without his assent or knowledge." *Id.* at 892. Thus, the bank misrepresented to Ms. Harper the nature of the allegations against her husband and the penalties that he could face in order to obtain her signature on the note. Ultimately, we affirmed the trial court's finding that Mrs. Harper, considering her "age, sex, intelligence, experience, and force of will of indorser, and all attendant facts and circumstances," *id.* at 886, was not liable on the note because she was under the duress of these threats against her husband when she signed it. *See generally **id.***

In the case at bar, Husband relies on *Simpson* for the ostensible premise that threats of criminal prosecution suffice in proving duress. However, our reading of *Simpson* indicates that *Simpson* is more nuanced than Husband suggests. In *Simpson*, the defendant's agreement to sign the note stemmed from threats to send her husband "to the penitentiary for the unlawful act of [his partner]"; however, the threats were made in bad faith as her husband could not actually be criminally responsible. *Id.* at 892. On the other hand, in Husband's case, the record supports that Wife's negotiations with Husband regarding the pending order of protection were not made in bad faith and that his criminal liability for violating the order was indeed possible. Further, again analyzing the "age, sex, intelligence, experience, and force of will of indorser, and all attendant facts and circumstances," it appears from the trial court's order and the record that Husband, when compared to Mrs. Harper, is more sophisticated and able to negotiate his own transactions. Husband's bargaining power and his force of will is supported in the record by evidence that he negotiated aspects of the Guaranty and by the trial court's finding that the MDA was "financially favorable" to Husband.

In reviewing Husband's sophistication, his bargaining power, and his representation by counsel, we cannot conclude that the trial court abused its discretion in finding that Husband was not under duress or coerced when he entered into the parties' MDA. Based on the foregoing, we also hold that Husband was not under duress when he signed the Guaranty and the MDA as Wife was within her rights under Tennessee law when she offered to not enforce the order of protection for Husband's violations in exchange for his cooperation. Because both parties freely and willingly entered into the Guaranty and the MDA, we conclude that both the Guaranty and the MDA entered into by the parties were valid and enforceable contracts.

**Hearing Requirement**

-11-

As we have determined the Guaranty and MDA were valid and enforceable, we next address Husband's argument that the trial court erred when it refused to conduct a hearing before granting the divorce and incorporating the MDA. We must determine whether the trial court was required under Tennessee Code Annotated Section 36-4-114 to hear proof on the facts prior to granting the divorce.

Husband argues that the trial judge abused his discretion when he declined to conduct a hearing before granting the parties' divorce. Specifically, Husband relies on *Hyneman v. Hyneman*, 152 S.W.3d 549 (Tenn. Ct. App. 2003), for the proposition that a trial court must conduct a hearing before granting a divorce on the ground of irreconcilable differences. Respectfully, this issue is without merit. In his brief, Husband purports to quote the following language from Tennessee Code Annotated Section 36-4-114, as it is allegedly cited in *Hyneman*:

> If the defendant admits the facts charged in the bill or petition and relied upon as grounds for a divorce, or the bill is taken for as confessed, the court shall nevertheless, **before a decree of divorce is accepted on the grounds of irreconcilable differences**, hear proof of the facts alleged as aforementioned and either dismiss the bill or petition or grant a divorce.

(Emphasis added). Rather, Section 36-4-114 actually provides:

> If the defendant admits the facts charged in the bill or petition and relied upon as grounds for a divorce, or the bill is taken for as confessed, the court shall nevertheless, **before decreeing a divorce, except a divorce on the ground of irreconcilable differences**, hear proof of the facts alleged as aforementioned and either dismiss the bill or petition or grant a divorce.

Tenn. Code Ann. § 36-4-114; *id.* at 552–53. The correct reading of the *Hyneman* case and Tennessee Code Annotated 36-4-114 reveals that a divorce on the ground of irreconcilable differences *is* an exception to the general rule that a trial court must conduct a hearing before granting a divorce.

We note that it is well-settled in Tennessee that a divorce generally cannot be granted based only upon the pleadings, absent a stipulation by the parties. *Hyneman v. Hyneman*, 152 S.W.3d 549, 554 (Tenn. Ct. App. 2003) (citing *McCarter v. McCarter*, No. 03A01-9606-CV-000196, 1996 WL 625798, at *2 (Tenn. Ct. App. 1996)). However, Tennessee Code Annotated Section 36-4-114 specifically provides, as stated above, that a divorce based

on the ground of irreconcilable differences is an exception to this general rule. Further, Tennessee Code Annotated Section 36-4-129, regarding stipulations, also permits the trial court to "upon stipulation to or proof of any ground of divorce . . . grant a divorce to the party who was less at fault or, if either or both parties are entitled to a divorce or **if a divorce is to be granted on the grounds of irreconcilable differences** declare the parties to be divorced, rather than awarding a divorce to either party alone." (Emphasis added.)

Our case of *Vaccarella v. Vaccarella*, 49 S.W.3d 307 (Tenn. Ct. App. 2001), supports the plain reading of the statutes as it pertains to the lack of a hearing requirement for irreconcilable differences divorces. The *Vaccarella* Court opined that the final decree of divorce was properly entered on the parties' incorporated marital dissolution agreement despite neither party appearing before the trial court for any hearing. *Id.* at 314. Specifically, we held that "the plain reading of section 36-4-103(b) and (c) does not require a formal hearing unless the court finds that the parties have not made adequate and sufficient provision for . . . the equitable settlement of any property rights." *Id.* at 313. Further, the Court explained that nothing in the Tennessee Code requires the trial court to conduct its own independent investigation prior to signing the parties' divorce decree. Indeed, the only requirement of the trial judge in granting the divorce is indicating that the marital dissolution agreement was "proper and equitable and the Court hereby approves, ratifies, and confirms said Agreement." *See* Tenn. Code Ann. § 36-4-103; *Brown v. Brown*, 863 S.W.2d 432, 436 (Tenn. Ct. App. 1993). Last, we noted that "[i]f the parties had wished to request a hearing at the time the judge signed the final decree, they were free to do so. However, the parties chose to settle their differences through written agreement and forego their right to a hearing." *Vaccarella*, 49 S.W.2d at 314.

In the instant case, the trial court's Final Judgment of Divorce entered on March 5, 2013 provides that "the parties have irreconcilable differences." Further, and more importantly, the incorporated Mediated MDA, under "GROUNDS," plainly states that "We have irreconcilable differences." The Mediated MDA was signed by Husband and Wife on January 11, 2013. In this situation, both Tennessee Code Annotated Section 36-4-114 and Section 36-4-129 permit the trial court to decline to conduct a hearing in divorces where the ground is irreconcilable differences. Nothing in the record indicates that either party requested a hearing before the trial court prior to the entry of the MDA. Thus, we conclude the trial court did not err when it did not conduct a hearing or trial before entering an order granting the parties' divorce.

In addition to his assertion that the trial court was required to conduct a hearing, Husband asserts that the final judgment of divorce is invalid because the trial judge failed to "satisfy itself that the [MDA] is fair and equitable." As support, Husband refers to *Vaccarella* again, arguing that "[e]ven in the *Vaccarella* case, there was a finding that the

-13-

marital dissolution agreement was 'fair and just and equitable and is in the best interest of said parties involved.'" Husband contends that "[such] language does not appear in the judgment in the case at bar either in the judgment or in the [MDA]." Tennessee Code Annotated Section 36-4-103(b) does in fact provide that the trial court include certain provisions in the final decree before entering the final decree of divorce based on irreconcilable differences:

> No divorce shall be granted on the ground of irreconcilable differences **unless the court affirmatively finds in its decree that the parties have made adequate and sufficient provision by written agreement . . . for the equitable settlement of any property rights between the parties**. If the court does not affirmatively find that the agreement is sufficient or equitable, the cause shall be continued by the court to allow further disposition by the petitioner.

(Emphasis added.) Upon review of the trial court's final judgment of divorce in this case, we conclude that the trial court satisfied the requirement of Tennessee Code Annotated Section 36-4-103(b) by stating that "the parties have entered into the *Marital Dissolution Agreement* which provides a complete and equitable settlement of the parties' property rights and debts and the Court hereby approves said agreement." As held in *Vaccarella*, we similarly conclude that "Tennessee Code Annotated section 36-4-103 was substantially complied with and that the written affirmative findings made by the judge were adequate, . . . the order entered . . . was a final order; once the gavel went down the MDA merged into the final decree." 49 S.W.3d at 314 (finding substantial compliance with Section 36-4-103 when the trial judge's final order stated that the parties' marital dissolution agreement was "fair and just and equitable and [was] in the best interest of said parties involved."); *see Brown v. Brown*, 863 S.W.2d at 432 (similarly affirming trial judge's entry of the final judgment of divorce when he found the parties' marital dissolution agreement "fair and just and equitable and is in the best interest of said parties involved.").

### Frivolous Appeal Damages

Last, we address Wife's request for frivolous appeal damages. Tennessee Code Annotated Section 27-1-122 states:

> When it appears to any reviewing court that the appeal from any court of record was frivolous or taken solely for delay, the court may, either upon motion of a party or of its own motion, award just damages against the appellant, which may include but need

-14-

not be limited to, costs, interest on the judgment, and expenses incurred by the appellee as a result of the appeal.

The decision to award damages for the filing of a frivolous appeal rests solely in the discretion of this Court. *See* ***Banks v. St. Francis Hosp.***, 697 S.W.2d 340, 343 (Tenn. 1985). "A frivolous appeal is one that is 'devoid of merit,' or one in which there is little prospect that it can ever succeed." ***Indus. Dev. Bd. v. Hancock***, 901 S.W.2d 382, 385 (Tenn. Ct. App. 1995) (citing ***Combustion Eng'g, Inc. v. Kennedy***, 562 S.W.2d 202 (Tenn. 1978)). Husband's brief is encumbered with several deficiencies as noted above. These deficiencies include his cursory review of relevant case law, his reliance on his stricken affidavit, his oversight of the trial court's compliance with Tennessee Code Annotated Section 36-4-103 when it approved the parties' MDA for entry, and Husband's serious and misleading misquotes of both Tennessee Code Annotated Section 36-4-114 and ***Hyneman v. Hyneman***, 152 S.W.3d 549 (Tenn. Ct. App. 2003). In light of these deficiencies, we award Wife damages for a frivolous appeal as they are the type of deficiencies that indicate Husband's position is "so utterly devoid of merit as to justify the imposition of a penalty." *See* ***Combustion Eng'g, Inc. v. Kennedy***, 562 S.W.2d 202, 205 (Tenn. 1978). We remand this case to the trial court for the entry of damages in favor of Wife, to include the attorney's fees and expenses incurred by her in defending this appeal.

Wife also contends that she is entitled to damages under the provisions of the MDA. However, in light of our award of frivolous appeal damages, this issue is pretermitted. Additionally, any argument that Wife would be entitled to attorney's fees in the trial court is hereby waived for failure to request these fees in the trial court. *See* Tenn. R. App. P. 36(a); ***Watson v. Watson***, 309 S.W.3d 483, 498 (Tenn. Ct. App. 2009) ("Issues that are not raised in the trial court may also be deemed waived.").

**Conclusion**

Based on the foregoing, we affirm the Hawkins County Circuit Court's entry of the final judgment of divorce with the parties' incorporated MDA. This cause is remanded to the trial court for all further proceedings as may be necessary and are consistent with this Opinion. Costs are taxed to Appellant, Richard Darrell Trigg, and his surety.

_____
J. STEVEN STAFFORD, JUDGE